CHICAGO GREAT WESTERN RAILWAY COMPANY v. ST. PAUL UNION

DEPOT COMPANY.[1]

May 12, 1897.

Nos. 10,270—(23).

### Union Depot—Contract—Mixed Trains—Use of Tracks.

Mixed trains, made up in part of a passenger equipment and in part of freight cars, used for the transportation of passengers, are "passenger trains," within the meaning of defendant's articles of association and of its "lease contract" with the plaintiff; and the defendant is required to furnish such trains reasonable passenger depot facilities and service.

### Same.

But it does not follow that such trains should be furnished the same facilities, and permitted to use the same tracks in a passenger depot, as are generally used by trains composed exclusively of a passenger equipment.

### Same—Reasonable Facilities.

The plaintiff failed to make out any case for an injunction to prevent the defendant from enforcing a by-law excluding mixed trains from the use of those tracks situated north of the iron posts supporting the south side of the roof or shed of its depot, and confining such trains to the use of the track immediately south of such posts, commonly called the "transfer track," because it was not made to appear that the latter track does not furnish reasonable "passenger depot" facilities for such trains.

### Same—Power of Union Depot Company to Make Rules.

The defendant corporation has the right to establish and enforce reasonable rules and regulations as to the use of its depot and tracks by its tenant members, and what rules and regulations are necessary and proper must be left to the judgment and discretion of its board of directors, subject only to the condition that they shall not be in conflict with its articles of association and the statutes defining its powers and duties, or in violation of the terms of its contracts with its tenant members.

Appeal by plaintiff from an order of the district court for Ramsey county, Egan, J., denying a motion for a new trial. Affirmed.

*Dan W. Lawler,* for appellant.

*W. H. Norris,* for respondent.

[1] Reported in 71 N. W. 23.

MITCHELL, J. This action was brought to enjoin the defendant from enforcing the following rule or by-law adopted by its board of directors on November 23, 1895, to wit:

"Resolved, that from this date freight trains and mixed trains of passenger and freight cars are hereby excluded from the passenger facilities in this company's station, and shall be limited to the use of the company's regular transfer facilities, except in cases of emergency when the regular transfer track is obstructed."

When plaintiff rested, the court dismissed the action, and from an order denying its motion for a new trial the plaintiff appealed.

The character and object of the defendant, the provisions of its articles of association and of the statutes defining its powers and duties, have been so often considered and so fully stated in former decisions, notably in State v. St. Paul, 42 Minn. 142, 43 N. W. 840, that a restatement of them would be unnecessary repetition. The plaintiff, formerly the Minnesota & Northwestern Railroad Company, is a tenant member of the defendant corporation, admitted on equal terms with the original members. See St. Paul v. Minnesota, 47 Minn. 154, 49 N. W. 646. The "lease contract" under which the plaintiff was admitted to the use of defendant's depot and passenger facilities, after reciting the provisions of its articles of association and of the statutes regulating its powers and duties, and the fact that it had acquired certain grounds, and had constructed thereon a Union Passenger Depot, and transfer tracks for the transaction of the transfer business contemplated by its articles of association, provides that the plaintiff shall have the use and enjoyment of said Union Depot and tracks in common, to the extent and in the manner hereinafter mentioned and prescribed, with other railroad companies which have been, or may hereafter be, granted like or similar use and enjoyment.

The contract then provides that the defendant shall assign to the plaintiff, from time to time, a suitable track or tracks on said grounds connecting at such practicable and suitable place on the boundary of said grounds as the plaintiff shall designate with the main track of the plaintiff, and with the track or tracks running into said passenger depot for the use of passenger trains operated by the plaintiff; also that the defendant will transfer upon its tracks to any other railroad connecting therewith, or to any industry to which such

tracks extend, all freight cars which the plaintiff shall desire to be so transferred. It is provided that all these rights and privileges are subject to the right of the defendant, from time to time, to establish such reasonable rules and regulations as will conduce to keep the tracks open and free for use. The defendant's articles of association recited in this "lease contract" also provide that the use of passenger depot and transfer tracks by tenant companies shall be subject to "proper regulations." The power to make these regulations is vested in the board of directors.

It appeared from the evidence that the plaintiff had been operating a local mixed freight and passenger train between Minneapolis and Dodge Center via St. Paul, at which last-named place it stopped to receive and discharge passengers. This train usually consisted in part of the usual passenger equipment, and in about an equal part of loaded freight cars which were being hauled from Minneapolis to Dodge Center. Prior to the adoption of the by-law or rule already quoted, this train had been accustomed to use the track immediately inside and north of the row of iron posts which support the depot roof or shed on the south side. The by-law is broad enough in its terms to exclude mixed trains entirely from all passenger depot service and facilities whatsoever. But on the trial no evidence was introduced or offered that the defendant refused plaintiff's train depot service or passenger depot facilities except that it excluded it from the use of the tracks north and inside of the row of posts referred to, and confined it to the use of track No. 10, immediately south of the posts, and commonly called "the transfer track."

In the pleadings and on the trial the parties use the term "passenger depot" as meaning only the ground and tracks inside the posts, which are commonly used for the accommodation of passenger trains; and this is evidently what they mean when they speak of this mixed train being excluded from the passenger depot. But track No. 10, which is also under the cover of the depot roof, is as much a part of defendant's depot grounds and depot facilities as are the tracks north of it. And throughout the trial plaintiff's counsel proceeded upon the theory that the gist of his ground of complaint consisted in this mixed train being excluded from the tracks commonly used by passenger trains, and confined to the use of this so-called "transfer

track." His evidence proceeded on this line, for he attempted to prove that track No. 10 did not furnish as adequate facilities for the receipt and discharge of passengers as track No. 9, which the train had formerly occupied; also that there was no good reason why defendant should not permit this mixed train to continue to occupy the latter track, because, notwithstanding its rule or by-law, it still continued to permit it to be used for the transfer of freight cars from one road to another, whenever track No. 10 was otherwise occupied. Therefore, in determining whether the action was properly dismissed when plaintiff rested, we are justified in assuming that its counsel had, by his course on the trial, impliedly waived any claim that the effect of the by-law was to exclude this mixed train from all depot service and facilities, and rested plaintiff's right to relief exclusively on the ground that it was excluded from the tracks commonly used by passenger trains, and was confined to the use of track No. 10, commonly used for mere transfer purposes.

Most of the evidence on the trial in the court below, as well as of the argument in this court, was devoted to the history of the dispute between the parties prior to the adoption of this by-law, as to whether the plaintiff should pay "passenger car" rates or only transfer rates, five cents per car, on the freight cars in this mixed train. In our opinion, this is wholly foreign to the issue in this case, but we might, however, suggest, in passing, that even if it be conceded that plaintiff had an absolute legal right to run this mixed train on one of the tracks inside and north of the iron posts, it by no means follows that it would have a right to do so by paying only transfer rates on the freight cars attached. Neither, on the other hand, would it necessarily follow that it would be reasonable for defendant to charge full passenger car rates on these freight cars. Moreover, in case of a disagreement between the parties as to the proper rates to be charged, the proper course as well as duty of the plaintiff was, not to sit back, and set the rules of the defendant at defiance, but to make a demand for a change of the rule, and for submission of the subject of disagreement to arbitration in the manner prescribed by section 17 of the "lease contract." But this, as already suggested, is foreign to the issue in this case.

Defendant's contention, based on the literal language of its articles

of association, is that its duties are limited to (1) furnishing depot facilities to passenger trains made up exclusively of a passenger equipment, and (2) transferring freight cars from one railroad to another, or to important industries, in the city of St. Paul; and therefore it is not required, under any circumstances, to furnish any passenger depot facilities or service to mixed trains, and that any such facilities or service which it had furnished to plaintiff's mixed train was purely a matter of favor, which it might terminate at will. We cannot concur in this view. In this western country, at least, so-called "mixed trains" are recognized and well-known agencies for the transportation of passengers, often required alike by the necessities and convenience of both the railroad companies and the public. In view of this fact, as well as of the public nature of the service which the defendant was designed to perform, it would be altogether too narrow a view to take of its duty to hold that it could taboo mixed trains altogether, and arbitrarily refuse to furnish them reasonable depot facilities and service.

But the apparent contention of plaintiff that such trains are entitled, as a matter of legal right, to the same facilities, and to the use of the same tracks, as trains made up exclusively of a passenger equipment, is equally untenable. There are manifest reasons, founded on grounds both of convenience and safety, why it might be entirely proper to exclude trains made up in whole or in part of freight cars from those tracks in a passenger depot commonly used by passenger trains. And we are by no means prepared to say that circumstances may not arise, growing out of the limited facilities of the defendant, and the future growth of passenger business, when the necessities of the situation may render it necessary to exclude mixed trains altogether from the facilities of this passenger depot. That question is not now before us. The present case involves no question of discrimination against the plaintiff in favor of other tenant members of the defendant. The rule or by-law applies to all alike. It does not exclude defendant's exclusively passenger trains from the use of other tracks in the depot, for it only applies to freight and mixed trains; and there is no evidence in the case that this so-called "regular transfer track" will not furnish the defendant reasonable "depot facilities" for the receipt and discharge of passengers and their baggage; and

there is virtually no evidence that it will not furnish facilities equally good with those furnished by the track immediately north, which the plaintiff had previously used.

The only evidence having the least tendency to prove the contrary was the testimony of one witness that the schedule time of this mixed train might interfere with that of a train of another railroad which used the same track, a matter capable of being remedied by either plaintiff or defendant by five minutes' change of time; and the opinion of another witness that the transfer track might be somewhat less safe on account of the liability of passengers to come in contact with the posts in case they should stand on the lower steps of a car and lean out. The courts ought not lightly to interfere with the defendant's management of its own business. Its articles of association, as well as its contract with the plaintiff, give it the power to establish and enforce a system of rules and regulations subject to which its tenant members shall use and enjoy its privileges. Safe administration of its affairs requires such a system. Every member of the corporation is bound to obey these rules and regulations; and what rules and regulations are necessary and proper must generally, if not always, be left to the judgment and discretion of the board of directors, subject only to the condition that they are not in conflict with the law of its being, which consists of its articles of corporation and the statutes regulating its powers and duties, or in violation of the terms of its contracts with its tenant members.

An injunction interfering with any rules or regulations regarding the management of its affairs or the use of its property by its members ought not to be granted unless it is made apparent that such rules or regulations are in violation of its duties under its articles of association or of some contract right of one of its members. The plaintiff failed to establish any such case, and the court below was right in dismissing the action.

Order affirmed.