ÆTNA LIFE INS. CO. v. VANDECAR.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 934.

1. INSURANCE—ACCIDENT POLICY—EVIDENCE.
   In an action for damages under an accident policy, where the defendant claims that the injury was not accidental, the burden is upon the plaintiff to establish that it was accidental,—that is, without design, volition, or intent on his part,—and any evidence tending to show that the injury was intentional, or which constituted a link in the chain of proof necessary to establish that fact, should be admitted.

2. SAME—INJURIES IN A PASSENGER CONVEYANCE.
   Where the policy provides that, "if such injuries are sustained while riding as a passenger in a passenger conveyance using steam, cable, or electricity as the motive power, the amount to be paid shall be double the sum above specified," these words do not apply to one riding on the platform of a railway car.
   Thayer, Circuit Judge, dissenting as to the latter proposition.

In Error to the Circuit Court of the United States for the District of Nebraska.

Charles J. Greene and Ralph W. Breckenridge, for plaintiff in error.

E. Wakeley (A. C. Wakeley, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This is an action upon an accident policy of insurance. In the petition setting out the plaintiff's cause of action it is alleged that the defendant is a corporation organized under the laws of the state of Connecticut, and carrying on a life and accident insurance business in the state of Nebraska and elsewhere; that on the 14th of October, 1895, at Omaha, Neb., in consideration of the sum of

$25, the premium to it duly paid by the plaintiff, and of certain alleged warranties made in the application for insurance, the defendant executed and delivered to the plaintiff its "combination accident policy" No. 213,045, for the principal sum of $10,000, wherein and whereby the defendant company insured the plaintiff, under classification "select," being a life insurance agent by occupation, for the term of six months from noon of the 14th day of October, 1895, in the sum of $50 per week against loss of time, not exceeding 52 consecutive weeks, resulting from bodily injury effected during the term of said insurance by external, violent, and accidental means which should, independently of any other causes, immediately and wholly disable him from prosecuting any and every kind of business pertaining to his occupation, above stated; or, said policy further provided, if such injury alone resulted within 90 days in the loss, by removal, of the right hand at or above the wrist, or either leg at or above the knee, the said defendant would pay to the said plaintiff one-half ($5,000) of the principal sum insured in lieu of weekly indemnity as therein provided, and the said policy should cease, and be surrendered to the company. It is also alleged that it is further provided in the policy, if such injuries are sustained while riding as a passenger in a passenger conveyance using steam, cable, or electricity as a motive power the amount to be paid shall be double the sum above specified; and in case of accident notice shall be given to the defendant, and that proof of loss of a limb, or death, or sight, as the case may be, shall be furnished within seven months from the happening of the accident. It is also alleged that, after the payment of the premium, and its receipt and acceptance by the company, and after the issuance and delivery of the policy, and while the same was in full force and effect, on the 11th of November, 1895, the plaintiff was riding, as a passenger, in a passenger conveyance using steam as a motive power, to wit, on a passenger train of the Omaha & Republican Valley Railroad Company; that upon arriving in Loup City, in Howard county, Neb., at about 7:30 in the evening, after the station of Loup City had been called, and the doors of the car opened by the conductor, the plaintiff, who had arisen from his seat, was standing on the platform of the car, with his valise in hand, ready to alight, when the car was given a sudden and violent impetus and jerk, throwing the plaintiff down on the steps of the platform, and thence to the ground, and in such a manner that, although the plaintiff exercised due care in the premises, and made all of the effort which it was possible for him to make to avoid the injury, the wheel of the car ran over his right hand, and the plaintiff thus received a bodily injury through violent, external, and accidental means; that the result of the injury was such as to necessitate the amputation of the plaintiff's right hand above the wrist. It is then alleged that the plaintiff, at the time of the injury, was the owner and holder of the policy, and that he immediately notified the insurance company of the accident, and that within seven months from the date of the accident he furnished the defendant proof of the loss of his right hand, and duly complied with, and in every respect performed, all of the conditions of the policy on his part to be performed, and prayed judgment for $10,000. The defendant, in its

amended answer, admits the corporate existence of the defendant, and that on the 14th day of October, 1895, in consideration of the warranties made in the application therefor and of the premium paid by the plaintiff to the defendant, it issued a policy of accident insurance to the plaintiff substantially as set out in the second.paragraph of his petition, but denies that the injuries for which the plaintiff seeks to recover were effected through accidental means, and denies that the plaintiff was injured while riding as a passenger in a passenger conveyance. It then sets out certain warranties in the application, and alleges that they were false, and known by the plaintiff to be false. It also alleges that the plaintiff violated the rules of the railroad company on whose train he was a passenger by riding upon the platform of a moving car; that he voluntarily exposed himself to unnecessary danger by leaving a seat inside of the car, and going upon and riding upon the platform; that he exposed himself to unnecessary danger by trying to leave a moving conveyance using steam as a motive power. It then denies each and every. allegation in the plaintiff's petition not specifically admitted or denied. January 21, 1897, the plaintiff filed a reply to the amended answer. There was a trial, verdict and judgment for the plaintiff in the sum of $10,612.50 and costs.

The policy, by its terms, insures the plaintiff for the term of six months, commencing at noon on the 14th of October, 1895, in the sum of $50 per week, against loss of time, not exceeding 52 consecutive weeks, resulting from bodily injuries effected during the term of the insurance from external, violent, and accidental means. The policy also provides that, if such injuries alone result within 90 days in loss, by removal, of the plaintiff's right hand at or above the wrist, the defendant will pay to him one-half of the principal sum insured, in lieu of weekly indemnity as therein provided; and, if such injuries are sustained while riding as a passenger in a passenger conveyance using steam, cable, or electricity as a motive power, the amount to be paid shall be double the sum specified. The policy was issued subject to certain conditions printed thereon, which were made a part of the policy, and among these conditions are the following:

"This insurance does not cover * * * accident, nor death, nor loss of limb or sight, nor disability, resulting. wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected: * * * Intentional injuries inflicted by the insured or any other person (assaults by burglars and robbers excepted); * * * violating the rules of a corporation; voluntary exposure to unnecessary danger; * * * entering, or trying to enter, or leave, a moving conveyance using steam as a motive power (except cable and electric street cars); riding in or on any such conveyance not provided for transportation of passengers."

The evidence shows that on the 11th of November, 1895, the plaintiff purchased a ticket, and was traveling as a passenger on a passenger train of the Omaha & Republican Valley Railroad, from St. Paul to Loup City, in the state of Nebraska; that the train, from St. Paul for Loup City, left St. Paul between 4 and 5 o'clock in the afternoon, and arrived at Loup City between 7 and 8 o'clock the same evening, where the train remained over night; that as the train approached Loup City on the date in question, after the whistle had sounded for the

station, the plaintiff and a man by the name of John Iams went out upon the front platform of the rear coach of the train while the train was yet in motion, and going at a speed, estimated by the plaintiff, from 8 to 12 miles per hour. The plaintiff testified that while standing upon the platform of the car he had a valise in one hand, and had the other hand in his overcoat pocket; that when the train was a short distance from the station, by a sudden jolt of the car, Iams was thrown against him, causing him to fall from the platform upon which he was standing to the ground; that as he fell he caught hold of the hand rail, or step of the car,—he did not know which,—and, landing partially on his feet, was thus pulled or dragged along for some distance, when he was obliged to relinquish his grasp, and was thrown under the car, the rear truck of which run over his right hand, bruising and mangling it to such an extent that amputation above the wrist became necessary. Neither the conductor, who was on the rear platform of the baggage car immediately in front of the car upon the front platform of which the plaintiff stood, nor the brakeman, who was standing upon the steps of the platform of the front end of the passenger coach, heard any outcry or exclamation from the plaintiff or any one else, and did not know of the injury to the plaintiff until after the train had stopped at the station. The plaintiff was first discovered, after the injury, by the porter of the St. Elmo Hotel, at Loup City, who came down to meet the train with the bus, and by the light of his lantern saw the plaintiff kneeling on his knees with his right hand on the rail of the track. The evidence further shows that the train upon which plaintiff was traveling consisted of a freight car, baggage car, and combination coach; that the cars were equipped with air brakes in perfect order; that there was a rule in force upon the Omaha & Republican Valley Railway, at the time of this accident, prohibiting passengers from riding upon the platforms of cars while the trains were in motion, and notices as follows: "Passengers are not allowed to go upon the platform of the car while the train is in motion," were posted at each end of the passenger coaches.

The fact that, at the time and place mentioned in his petition, the plaintiff suffered an external and violent injury to his right hand which necessitated its amputation is not controverted. The only question, therefore, is, was the injury, in addition to being external and violent, also accidental? Various definitions are found in books defining the words "accident" and "accidental," some of which are as follows: "An event happening without the concurrence of the will of the person by whose agency it was caused;" "any event that takes place without one's foresight or expectation;" "anything occurring unexpectedly, or without known or assignable cause;" "an accident is that which happens without one's direct intention;" "an accident is that which happens without design or expectation;" "it is defined as the happening of an event without the design and aid of a person, and which is unforeseen." "Accidental" signifies "happening by chance or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." The opposite of accident is design, volition, intent. In many of the definitions the idea of design is excluded, making the event wholly involuntary. In the

case of Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, the supreme court of the United States approved an instruction to the effect that the term "accidental" was used in a policy of insurance in its ordinary (popular) sense as meaning a happening by chance; unexpectedly taking place, not according to the usual course of things or not as expected; that, if a result is such as follows from ordinary means voluntarily employed in a not unusual and unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted from accidental means. The plaintiff alleges in his petition that he received the injury for which he seeks to recover from external, violent, and accidental means. This is denied by the defendant, both specifically and by general denial. Under the issues thus made by the pleadings, we think the burden is upon the plaintiff to establish, not only that the injury was the result of external and violent, but of accidental, means; that is to say, that it was without design, volition, or intent upon his part. Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360. Mr. Justice Harlan, in delivering the opinion of the court in the case cited, said:

"There is no escape from the conclusion that, under the issue presented by the general denial in the answer, it is incumbent upon the plaintiff to show from all the evidence that the death of the insured was the result, not only of external and violent, but of accidental, means. The policy provides that the insurance shall not extend to any case of death or personal injury unless the claimant, under the policy, establishes by direct and positive proof that such death or personal injury was caused by external, violent, and accidental means."

The burden is always upon a plaintiff to establish his cause of action when it is in proper form denied by the defendant. It is very common to say in such cases that the burden is upon the defendant to establish the fact relied upon. All that this can properly mean is that, when the plaintiff has established a prima facie case, the defendant is bound to controvert it by evidence, otherwise judgment will go against him. When such evidence is given, however, and the case upon the whole evidence—that for and that against the facts asserted by the plaintiff—is submitted to the jury, then the question of the burden of proof as to any fact, in its proper sense, arises and rests upon the party upon whom it was at the outset, and is not shifted by the course of the trial; and, to entitle him to recover, all the material issues tendered by the plaintiff must be established by him by a preponderance of the evidence.

At the trial the plaintiff introduced evidence tending to show that his injury resulted from accidental means. For the purpose of meeting this proof and the prima facie case made by the plaintiff, the defendant offered to prove by A. S. Greene, a witness on its behalf, that after the issuance of the policy, and prior to the date of the accident, in a conversation had with the plaintiff at the Lindell Hotel, in Lincoln, plaintiff stated to the witness, "You know, Greene, that I have been damned hard up, but I am going to make a stake;" to which the witness replied, "How is that, Van?" and that Vandecar replied thereto by striking himself on the breast pocket and saying,

"What did I take out three insurance policies for?" The witness then said to the plaintiff, "You are not going to have an accident, are you, Vandecar?" to which the plaintiff replied: "You just wait and see. I have been hard up long enough, and I am going to get in a position shortly where I will have what money I need." The defendant also offered to prove by Dr. George O. W. Farnum, a witness on its behalf, that early in September, 1895, he had several conversations with the plaintiff regarding an injury to the foot or hand; that plaintiff wished to know how and where to ligate in case a hand or foot was crushed in being run over, and witness explained to plaintiff how the blood could be stopped in case a hand was crushed; that witness said to plaintiff, the best method would be to have it crushed where he could have a physician, but, in the absence of a physician, he could roll up and tie his handkerchief around the arm above the injury, and twist it tight with his lead pencil, and it would entirely stop the flow of blood; and the same would hold good in case the foot was crushed, and he could bandage the leg; that the plaintiff further inquired of the witness what would be the percentage of mortality in case of such an injury, and the witness assured him there was very little danger, as it would be gross carelessness in a physician if he lost a patient in amputating a hand or foot. This evidence was excluded by the court, and the rulings of the court are assigned for error. In the proof of cases involving the motives of men as influencing and giving character to their acts, it is impossible to confine the evidence within any precise limit. "It is admissible if it tends to prove the issue or constitutes a link in the chain of proof." 1 Greenl. Ev. 67; Cook v. Moore, 11 Cush. 216. In the case just cited it was held, for the purpose of proving that a conveyance of property made by a bankrupt was fraudulent under the United States bankrupt act of 1841, because made to defraud the plaintiff of his debt, that evidence tending to show that the defendant entertained such fraudulent intent even before the passage of the bankrupt act was admissible. The court said:

"Whenever the intent of a party forms part of the matter in issue upon the pleadings, evidence may be given of other acts, not in issue, provided they tend to establish the intent of the party in doing the acts in question. * * * The reason for this rule is obvious. The only mode of showing a present intent is often to be found in proof of a like intent previously entertained. The existence in the mind of a deliberate design to do a certain act, when once proved, may properly lead to the inference that the intent once harbored continued, and was carried into effect by acts long subsequent to the origin of the motive by which they were prompted."

Under the provisions of the contract in this case the plaintiff could only recover for an accidental injury. If the injury was intentional, it was not accidental, and the plaintiff could not recover. Any evidence, therefore, tending to show that the injury was intentional, or which constituted a link in the chain of proof necessary to establish that fact, was admissible under the issue presented by the denials in the answer. The evidence offered should have been admitted. It tended to show an intent previously entertained by the plaintiff to bring upon himself an injury of the character for which he now seeks to recover, and was, therefore, at least one step towards the proof of

defendant's contention. And if this evidence, when considered in connection with the other facts and circumstances proved on the trial, had been sufficient to satisfy the jury that the plaintiff once harbored an intent to thus injure himself, that such intent continued in his mind, and was carried out by bringing upon himself this injury, a complete defense to the plaintiff's cause of action would have been made out. Whether the evidence offered, when considered in connection with the other evidence in the case, was sufficient to warrant this result, is to be determined by the jury; but the defendant had the undoubted right to have it considered by the jury in determining the question as to the accidental character of the injury. The circuit court seems to have held that by the contract of the parties every case of intentional injury described in the conditions annexed to the policy was made an express exception to the general description of injuries covered by it, and therefore took the place of and superseded all exceptions which might have been implied from or come within the general language in the body of the policy; and, to avail the defendant as a defense, it must be specially pleaded. It was in this view of the case, doubtless, that the testimony above mentioned was excluded, and the jury instructed "that the defendant has not set up in its answer, or claimed in its pleadings, that the injury was intentionally inflicted by the insured, or any other persons; and the jury is not to inquire whether or not the injury was intentional, and are not permitted to find or determine that it was so." As already suggested, we think that by the terms of the contract the burden was upon the plaintiff, under the issue presented by the general denial in the answer, to prove that the injury for which he seeks to recover was the result of an accident. As no valid claim could be made, under the contract, if the insured intentionally brought upon himself the injury which resulted in the loss of his hand, it was error to instruct the jury that "the jury are not to inquire whether or not the injury was intentional, and are not permitted to find or determine that it was so." The views here expressed do not conflict with the case of Association v. Shryock, 36 U. S. App. 658, 20 C. C. A. 3, and 73 Fed. 774. In that case the insurance company alleged in its answer that the death of Shryock was caused by disease, and at the trial offered evidence tending to show that he committed suicide. The circuit court declined to admit the testimony, on the ground that it was irrelevant, and the ruling was sustained by this court. Judge Sanborn, in delivering the opinion of the court, said: "The association pleaded no such defense, but pleaded that the death was caused by disease,—a defense inconsistent with the theory of suicide."

The policy in suit also provides, "If such injuries are sustained while riding as a passenger in a passenger conveyance using steam, cable, or electricity as a motive power, the amount to be paid shall be double the sum above specified," and the court instructed the jury as follows:

"The court instructs you as a matter of law that a person riding upon the platform of a passenger car, as was the plaintiff, is within the provision of the policy in question which provides that, if the injuries are sustained while riding as a passenger in a passenger conveyance using steam as a motive power, the amount to be paid shall be double the amount specified."

We cannot assent to the construction placed upon this provision of the contract by the circuit court. Contracts are to be enforced as made. The provisions of an insurance contract, like the provisions of any other contract, are to be given effect according to the fair meaning of the words used. Ripley v. Insurance Co., 16 Wall. 336. If the words do not clearly indicate the intention of the parties, then, within the well-known rule, it would be the duty of the court to give the contract that interpretation most favorable to the insured. Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360. The policy, however, constitutes the only relation between the parties. If it does not, by the fair and natural import of its words, give a right to double the sum specified, under the facts, then the plaintiff, if entitled to recover at all, could only recover the sum specified in the policy. The contract in this case provides that, if the plaintiff sustains injuries while riding as a passenger in a passenger conveyance using steam, cable, or electricity as a motive power, the amount to be paid shall be double the amount specified in the policy for such injuries. We think the words used in the contract clearly indicate the intention of the parties. They evidently meant to stipulate for the double indemnity while the insured was riding in an exceptionally safe place. One who rides as a passenger in a passenger conveyance using steam occupies such a place. But one who rides on, but not in, such a conveyance, whether on the platform, or on the top of the car, or on the machinery beneath it, occupies a very dangerous place, and the parties neither agreed by the terms of their contract, nor intended to agree, that this double indemnity should be paid to one who rode in such a position. The plain meaning of this provision is that, if the plaintiff is injured while traveling as a passenger in a place in a passenger conveyance (using the motive power mentioned in the contract) assigned for passengers,—in this case within the car,—the defendant will pay double the amount mentioned in the policy. That the defendant had a right to so limit its liability there can be no doubt. Bigelow v. Insurance Co., 93 U. S. 284; Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360; Insurance Co. v. Seaver, 19 Wall. 531. The words "in a passenger conveyance" were doubtless used advisedly, and for the express purpose of limiting the defendant's liability. The reason for so doing is at once apparent. The place specified in the contract —"in a passenger conveyance"—is a place of little or no danger, and the risk assumed is slight, while on the platform of a conveyance using the motive power described in the contract, and especially, as in this case, on the platform of a railway car, is an exceedingly dangerous place when the train, to which the car is attached, is in motion. That riding upon the platforms of railway cars, when trains are in motion, is dangerous, is a matter well understood by the railway companies and people who are accustomed to traveling by rail, and, in order that passengers may be advised of the danger, in almost every passenger car in service upon the various railways of the country notices are posted in conspicuous places in the car warning passengers that it is dangerous to go upon the platforms of the cars while the train is in motion.

86 F.—19.

The contract in this case provides for double compensation in certain cases, but, to entitle the policy holder to recover this double compensation, his case must come fairly within its terms. The fact that it is not unusual for passengers traveling by rail to go upon the platforms of cars before the train stops at a station, as did the plaintiff in this case, cannot change or extend the contract of the parties. If the plaintiff had remained in the car—the place assigned for passengers on the train by which he was traveling—until it arrived at the station, he could not have been injured. He chose, however, to occupy a more dangerous position on the platform of the car; a position which, giving effect to the contract according to the fair meaning of the words used, does not come within the provision of the policy now under consideration.

The assignments of error which seek to question the action of the circuit court in refusing to submit special findings requested by the defendant are without merit. Railroad Co. v. Horst, 93 U. S. 291; Nudd v. Burrows, 91 U. S. 426; Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755. The last suggestion applies also to the assignments of error directed to the refusal of the court to instruct a verdict for the defendant. Railroad Co. v. Woodson, 134 U. S. 614, 10 Sup. Ct. 628; Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140. For the errors to which we have called attention the judgment must be reversed, and the case remanded to the circuit court, with directions to grant a new trial.

THAYER, Circuit Judge. I concur in the reversal of this case on the first ground stated in the opinion of the majority, but I am not able to assent to the second proposition,—that, to entitle the insured to claim a double indemnity for the injuries which he sustained, it was necessary for him to show that they were inflicted while he was actually inside of the car. That view, in my judgment, attaches undue importance to a single word, and is highly technical. It also does violence to the probable intentions of the parties. The clause of the policy over which the controversy arises is as follows:

"If such injuries are sustained while riding as a passenger in any passenger conveyance using steam, cable, or electricity as a motive power, the amount to be paid shall be double the sum above specified."

The fundamental idea intended to be conveyed by this clause of the policy is that a double indemnity will be paid in case of an injury which is within the terms of the policy, provided it is sustained by one while traveling in, by, or on a certain class of public conveyances. In ordinary conversation persons are often heard to say that they came "by train," or "on a train," or "in a train," without intending to indicate by either form of expression the particular place in that conveyance which they occupied. It is hard to believe, therefore, that any special significance was intended to be given by the use of. the word "in" in the clause above quoted. If the insurance company had intended to say that it would pay a double indemnity for injuries sustained while traveling by the public conveyances specified only in the event that they were inflicted while the insured was in a given place

on one of such conveyances, to wit, on the inside, the language employed would doubtless have been, "while riding as a passenger [inside of] any passenger conveyance," etc. It is common knowledge that in cities and towns where electricity is used as a motor street-railway companies, at certain seasons of the year, use many open cars as well as closed cars, and that at some hours of the day, and during all seasons, many persons ride on the platforms of street-railway cars, and are permitted to do so; that being the only place where they can find standing room. The construction of the policy in suit which has been adopted by the majority of the court leads to the conclusion that a person insured by such a policy who happens to be injured while lawfully riding on the platform of one of such conveyances, or in a seat which has been provided on the top thereof, can only claim a single indemnity, while a person, injured perhaps at the same time while riding on the inside, either standing up or sitting down, can claim a double indemnity. I am not able to assent to an interpretation of the policy which leads to such a strange, not to say unreasonable, result. The fact is, I think, that the policy promises a double indemnity to any one who sustains an injury while he is lawfully a passenger on any of the conveyances specified in the policy, provided he is standing or sitting in any place where he is permitted for the time being by the proprietor of such a conveyance to either stand or sit. If a person is stealing a ride on the top of a car, or on the trucks underneath a car, that fact alone, in the event that he is injured, would prevent him from claiming any indemnity, under other provisions of the policy. Such supposable cases, therefore, merit no consideration. The defendant company intended to offer travelers special inducements to become insured against the risk of injury incurred while traveling, by promising them a double indemnity for that class of injuries, and a technical construction ought not to be placed on the policy to shield it from liability for a loss that is fairly within the terms of its contract. It must be borne in mind that the rule is to construe an insurance policy most strongly against the company, because such contracts are invariably drawn by the insurer, and reasonable doubts arising from the language which it has employed should be resolved against it. It cannot be said that the use of the word "in" in the policy in suit so clearly evidences an intention to pay a double indemnity only in those cases where the insured is injured while traveling on the inside of a railway or street car as to put the case at bar beyond the reach of that rule of construction. In my judgment, the rule in question should, in itself, have led to a different interpretation of the clause relating to double indemnity than the one which has been adopted by the majority of the court.