Cleveland, Cincinnati, Chicago and St. Louis Ry. Co.

*v.*

The People *ex rel.* T. M. Jett, State's Attorney.

*Opinion filed October 24, 1898.*

1. Corporations—*legislature may regulate use of corporate franchise by exercise of police power.* The legislature may, by general laws, regulate corporations in the exercise of their franchises, so as to provide for the public safety, health and welfare.

2. Railroads—*for purposes of local government a cross-State railroad is a domestic corporation.* A corporation operating a railroad across the State of Illinois is, for all purposes of local government, a domestic corporation, subject to the police control of the legislature.

3. Same—*act requiring trains to stop at county seats is a police regulation.* The act of 1879, (Laws of 1879, p. 225,) requiring all regular passenger trains in Illinois to stop at county seats, is not an attempt to regulate or interfere with inter-State commerce, but is a mere police regulation applicable within the limits of the State.

4. Same—*passenger trains devoted solely to "through" travel must stop at county seats.* A passenger train running on a regular schedule, but which does not carry passengers from one point in Illinois to another, being designed solely for through passage to points without the State, is not excepted from the act requiring regular passenger trains to stop at county seats, even though there are sufficient other regular trains to accommodate local business.

Appeal from the Circuit Court of Montgomery county; the Hon. Robert B. Shirley, Judge, presiding.

George F. McNulty, and John T. Dye, for appellant:

The regulation, control or interference with inter-State commerce has been confided exclusively to Con-

gress, and is not within the power of the States. *Leisy* v. *Hardin*, 135 U. S. 100; *Henderson* v. *Mayor*, 92 id. 259; *Railroad Co.* v. *Huesen*, 95 id. 465; *Robbins* v. *Shelby District*, 120 id. 489; *Walling* v. *Michigan*, 116 id. 466; *Railway Co.* v. *Illinois*, 118 id. 557; Prentice on Police Power, 268; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Hall* v. *DeCuir*, 95 id. 485; *Railway Co.* v. *Pennsylvania*, 136 id. 114.

While, by virtue of its jurisdiction over persons and property within its limits, a State may provide for the security of the lives, limbs, health and comfort of persons and protection of property so situated, yet a subject matter which has been confided exclusively to Congress by the constitution is not within the jurisdiction of the police power of the State unless placed there by congressional action. *Leisy* v. *Hardin*, 135 U. S. 100.

A State can never interfere with transportation into or through its borders beyond what is absolutely necessary for its own self-protection. *Railroad Co.* v. *Huesen*, 95 U. S. 465; *Burdick* v. *People*, 149 Ill. 608; *Council Bluffs* v. *Railroad Co.* 45 Iowa, 338.

It is no answer to the charge that a regulation of commerce by a State is forbidden by the constitution, to say that it falls within the police powers of the States, for to whatever class of legislative power it may belong it is prohibited to the States if granted exclusively to Congress. *Henderson* v. *Wickham*, 92 U. S. 259; Tiedeman on Lim. of Police Power, sec. 202, p. 614.

The intention of the legislature does not control. If the effect of the act is to interfere with or regulate inter-State commerce it is void. *Leisy* v. *Hardin*, 135 U. S. 100; *Railway Co.* v. *Commonwealth*, 88 Va. 95.

The non-exercise of the power to regulate inter-State commerce is equivalent to a declaration that inter-State commerce shall be free and untrammeled. *Welton* v. *Missouri*, 91 U. S. 275. *County of Mobile* v. *Kimball*, 102 id. 275; Prentice on Police Power, p. 268; Cooley's Const. Lim. (6th ed.) 717.

This train being demanded by and put on solely to meet the requirements of inter-State travel, and intended for no local business, to compel it to stop at county seats and do a local business is a violation of the Federal constitution, inasmuch as it interferes with and regulates inter-State commerce. 14 U. S. Stat. at Large, 66; Tiedeman on Lim. of Police Power, 616; Thompson on Corp. sec. 5503; *Council Bluffs* v. *Railroad Co.* 43 Iowa, 338; U. S. Rev. Stat. p. 1022, sec. 5258; Hurd's Stat. 1895, p. 1143.

M. T. Moloney, Attorney General, Thomas M. Jett, State's Attorney, (T. J. Scofield, James M. Truitt, and M. L. Newell, of counsel,) for appellee:

The legislature has the power, by the enactment of general laws from time to time, as the public exigencies may require, to regulate corporations in the exercise of their franchises, so as to provide for the public safety. *Railroad Co.* v. *Loomis,* 13 Ill. 548.

In granting a charter to a private corporation the State does not part with any of its power to enact proper police regulations operating upon such corporations the same as upon natural persons; and these bodies accept their charters upon the implied condition that they are to exercise their rights subject to the power of the State to regulate their action. *Railroad Co.* v. *McClellan,* 25 Ill. 123.

Every person, every corporation, everything within the territorial limits of the State, is, while there, subject to the constitutional authority of the State government. The State may require a railroad company to fence so much of its road as lies within the State; to stop its trains at railroad crossings; to slacken speed while running in a crowded thoroughfare; to post its tariffs and time-tables at proper places; and other things of a kindred character affecting the comfort, the convenience or the safety of those who are entitled to look to the State for protection against the wrongful or negligent conduct of others. *Stone* v. *Farmers' Trust Co.* 116 U. S. 307.

Mr. Justice Phillips delivered the opinion of the court:

The relator filed a petition alleging the appellant was an incorporated railway company operating a certain railroad from the city of St. Louis, Missouri, across the county of Montgomery and through the corporate limits of the city of Hillsboro, in said county, to the city of Indianapolis, in the State of Indiana. It was further alleged the city of Hillsboro was, and for many years had been, the county seat of said county of Montgomery, and that the appellant kept and maintained a railroad station and depot within the corporate limits of said city, where its passenger trains were accustomed to stop and take on and discharge passengers from its trains; that by the statutes of the State of Illinois it was the duty of the appellant to stop all regular passenger trains by it run over and upon said railroad within the corporate limits of said city at said railroad station a sufficient length of time to receive and discharge passengers, but, disregarding its duty, appellant unlawfully and knowingly runs a regular passenger train, designated as the "Knickerbocker Special," twice each day through the corporate limits of said city without stopping at the station to receive and discharge passengers, contrary to the provisions of the statute. The petition prayed for a writ of *mandamus* to compel the appellant to stop said train at the railroad station at the said county seat a sufficient length of time to receive and discharge passengers, as by the statute provided.

The answer averred that before and at the time of filing the petition appellant furnished ample and sufficient accommodation for all local and through business, and ready and convenient transportation to and from Hillsboro to all points and connections without delay; that the same number of trains ran and stopped as before the "Knickerbocker Special" was put on; that the latter was and is a train in urgent demand, specially devoted

to inter-State transportation between St. Louis and New York, because other trains which stop at Hillsboro and other county seats cannot make the time required by the demands of passengers and·inter-State commerce; that said train is not a regular passenger train carrying passengers from one point to another in Illinois, but is a special train engaged exclusively in inter-State travel from points wholly without to points wholly without the State of Illinois; that no tickets are sold or passengers received on this train from points in Illinois to points in Illinois, and that it makes no stops except such as are necessary for fuel, water, and at railway crossings; that to stop at county seats would destroy the usefulness of the train and interfere with and obstruct inter-State commerce; that sufficient trains convenient and suitable to the traveling public pass through and stop at Hillsboro to fully supply the demand; that the State of Illinois had no power to pass any act that would require such a train, devoted solely to inter-State commerce, to stop at county seats in Illinois, and that such an act is in violation of the constitution of the United States.

To this answer a demurrer was interposed and sustained. The defendant stood by its answer, whereupon the court entered judgment and awarded the peremptory writ of *mandamus*, and this appeal is prosecuted.

Section 25 of the Railroad act, as amended July 1, 1879, is as follows: "Every railroad corporation shall cause its passenger trains to stop, upon its arrival at each station advertised by such corporation as a place for receiving and discharging passengers upon and from such trains, a sufficient length of time to receive and let off such passengers with safety: *Provided,* all regular passenger trains shall stop a sufficient length of time at the railroad station·of county seats to receive and let off passengers with safety." (Hurd's Stat. 1889, p. 1060.) It is important first to determine the question as to the power of the legislature to pass this act, and whether

applicable to trains running through the State of Illinois and carrying passengers.

In *Chicago and Alton Railroad Co.* v. *People*, 105 Ill. 657, we said (p. 661): "In the enactment of the law requiring all regular passenger trains to stop at county seats, the legislature, no doubt, had in view the great benefit the public would derive in the increased facilities for reaching the county seat, to aid in the dispatch of business in courts, in the prompt arrest and prosecution of criminals who might be indicted in the courts, in the attendance of witnesses, grand and petit jurors,—indeed, the prompt and efficient transaction of all business in the courts held at the county seat, and the facility for the examination of the records on the sale and conveyance of property. These and various other matters pertaining to the welfare of the public doubtless led to the enactment of the law, and in its enactment we are fully satisfied that the legislature transcended none of its powers, nor did it violate any chartered right of the railroad company."

In granting a charter to a private corporation the State does not part with its power to enact proper police regulations. Corporations accept their charters upon the implied condition that they are to exercise their rights subject to this power of the State. The legislature has the power, by the enactment of general laws from time to time, as the public exigencies may require, to regulate corporations in the exercise of their franchises, so as to provide for the public safety, health and welfare. (*Galena and Chicago Union Railroad Co.* v. *Loomis*, 13 Ill. 548; *Ohio and Mississippi Railroad Co.* v. *McClelland*, 25 id. 123; *Illinois Central Railroad Co.* v. *People*, 143 id. 434.) This corporation operating a railroad across the State of Illinois is, for all purposes of local government, a domestic corporation, subject to the police control of the legislature of this State.

In *Chicago and Alton Railroad Co.* v. *People*, *supra*, it was said (p. 659): "The train in question was equipped and

operated in the same manner as any other passenger train on the road. It carried passengers and baggage as did other trains. It ran upon the official time-table of the company as other trains did. Indeed, the only difference between this and the other passenger trains on the road was, that the other two stopped at all the stations while this did not. On account of this difference, can the train, within the meaning of the statute, be regarded other than a regular passenger train? We think not. The language of the act would not, perhaps, include a wild train, a freight train, an excursion train or a special train; but where a train was engaged in carrying passengers, running regularly every day upon an advertised time-card of the company, equipped as all other passenger trains are, we are satisfied such a train was designed by the legislature to fall within the terms of the act, 'all regular passenger trains.' Had the legislature intended to except a fast train or a through train from the operation of the law, it would have been an easy matter to have framed the law in such a way that no doubt could have existed in regard to the intention, and if such had been intended, language of a different character would no doubt have been used." To the same effect is *People ex rel.* v. *Louisville and Nashville Railroad Co.* 120 Ill. 48.

In the case of *Stone* v. *Farmers' Loan and Trust Co.* 116 U. S. 307, it was said: "There can be no doubt that each of the States through which the Mobile and Ohio railroad passes incorporated the company for the purpose of securing the construction of a railroad from Mobile, through Alabama, Mississippi, Tennessee and Kentucky, to some point near the mouth of the Ohio river, where it would connect with another railroad to the lakes, and thus form a continuous line of inter-State communication between the Gulf of Mexico in the south and the great lakes in the north. It is equally certain that Congress aided in the construction of parts of this line of road so as to establish such a route of travel and transportation; but it

is none the less true that the corporation created by each State is, for all the purposes of local government, a domestic corporation, and that its railroad within the State is a matter of domestic concern. Every person, every corporation, everything within the territorial limits of a State, is, while there, subject to the constitutional authority of the State government. Clearly, under this rule Mississippi may govern this corporation, as it does all domestic corporations, in respect to every act and every thing within the State which is the lawful subject of State government. It may, beyond all question, by the settled rule of decision in this court, regulate freights and fares for business done exclusively within the State, and it would seem to be a matter of domestic concern to prevent the company from discriminating against persons and places in Mississippi. So it may make all needful regulations of a police character for the government of the company while operating its road in that jurisdiction. In this way it may certainly require the company to fence so much of the road as lies within the State; to stop its trains at railroad crossings; to slacken speed while running in a crowded thoroughfare; to post its tariffs and time-tables at proper places, and other things of a kindred character affecting the comfort, convenience or safety of those who are entitled to look to the State for protection against the wrongful or negligent conduct of others. This company is not relieved entirely from State regulation or State control in Mississippi simply because it has been incorporated by and is carrying on business in the other States through which its road runs. While in Mississippi it can be governed by Mississippi in respect to all things which have not been placed by the constitution of the United States within the exclusive jurisdiction of Congress,—that is to say, using the language of this court in *Cardwell* v. *Bridge Co.* 113 U. S. 210, (Bk. 28, L. ed. 961,) 'when the subjects on which it is exerted are national in their character and admit and

require uniformity of regulations affecting all States alike.' Under this rule nothing can be done by the government of Mississippi which will operate as a burden on the inter-State business of the company or impair the usefulness of its facilities for inter-State traffic. It is not enough to prevent the State from acting that the road in Mississippi is used in the aid of inter-State commerce. Legislation of this kind, to be unconstitutional, must be such as will necessarily amount to or operate as a regulation of business without the State as well as within."

Whilst the regulation and control of inter-State commerce has been confided exclusively to Congress, and a State can interfere with transportation into or through its borders only to the extent absolutely necessary for its own protection, still, whatever tends to promote the health, safety or welfare of society would be a proper exercise of the police power. (*Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill. 37.) Whatever is necessary to provide for the public welfare and the general security is within the police power of the government. Whether a particular regulation is a reasonable exercise of the police power is strictly a judicial question, but the law-making power is the sole judge of when the necessity exists, and when, if at all, it will exercise the right to enact such laws. As held in *Chicago and Alton Railroad Co.* v. *People, supra:* "The prompt and efficient transaction of all business in the courts held at the county seat, * * * and various other matters pertaining to the welfare of the public, doubtless led to the enactment of the law." Such a statute for such a purpose would be a proper exercise of the police power of the State.

It is insisted that while, by virtue of its jurisdiction over persons and property within its limits, a State may provide for the security of the lives, limbs, health and comfort of persons, and for the protection of property there situated, yet a subject matter which has been con-

fided exclusively to Congress by the constitution is not within the jurisdiction of the police power of the State unless placed there by congressional action. Whilst admitting this proposition to be true so far as it goes, yet we find no warrant for holding that the State is excluded from an exercise of a police power looking to the general welfare of the public, or that that subject matter has been by the constitution confided exclusively to the Congress of the United States. Although the regulation of inter-State commerce is confided to Congress, the railroads within this State are domestic concerns, subject to the constitutional authority of the State government, which may regulate freights and fares for business done exclusively within the State, and make needful police regulations. As held in *Stone* v. *Farmers' Loan and Trust Co. supra:* "This company is not relieved entirely from State regulation or State control * * * because it has been incorporated by and is carrying on business in the other States through which its road runs." If this latter fact deprived the State of the exercise of the police power, the lives and property of its citizens might be sacrificed in crowded thoroughfares and the State be powerless to protect them.

It is finally urged that as this train was demanded by and put on solely to meet the requirements of inter-State travel and was intended for no local business, to compel it to stop at county seats and do a local business would be a violation of the Federal constitution, inasmuch as such action would interfere with and regulate inter-State commerce. This railroad company, at the time of the filing of this petition, was running its trains over the tracks of what is known as the Terre Haute and Alton Railroad Company, which was incorporated under an act of the legislature of the State of Illinois in force January 28, 1851. At the same session of the legislature a supplemental act was also enacted in relation to the incorporation of the Terre Haute and Alton Railroad Com-

pany, which supplemental act went into effect February 13, 1851. An act was also passed by the legislature of the State of Illinois amending the act in relation to the incorporation of the Terre Haute and Alton Railroad Company, which last act went into force February 28, 1854. These acts were declared to be public acts. The authority for constructing, operating and maintaining the track over which trains of the appellant pass was all derived through and from the State of Illinois. At the time of the construction of the railroad over which the trains of the appellant company pass, the city of Hillsboro was one of the objective points through which it was to run, as designated in and by the authority granted to the company by the legislature of the State of Illinois. This company cannot, by its manner of doing business, escape State control and disregard a statute of the State which seeks to regulate and control domestic concerns within the limits of the State for the public welfare and general good. Appellant's "Knickerbocker Special" is not national in its character, requiring uniformity of regulations affecting all States alike.

The Illinois act operates as a regulation of business within the State only. We hold this act is not an interference with inter-State commerce, but a mere police regulation, applicable solely to the limits of the State of Illinois. It no more interferes with the expedition with which trains passing through the State carrying passengers from one State to another exclusively may reach their destination than does a regulation limiting the speed of trains running through a crowded thoroughfare, and, like the latter regulation, is for the public welfare.

It was not error to sustain the demurrer to the answer, and the judgment of the circuit court of Montgomery county is affirmed. *Judgment affirmed.*