### 6219. POWER *v.* GAINESVILLE & NORTHWESTERN RAILROAD COMPANY.

A railway-train operated on a fixed schedule is a "passenger-train" within the contemplation of a contract using that term, if the train includes one or more cars for the carriage of passengers under the regulations imposed by law for such transportation, notwithstanding it may include cars used exclusively for transportation of freight.

DECIDED SEPTEMBER 2, 1915.

· Action on contract—appeal; from White superior court—Judge J. B. Jones.  December 3, 1914.

C. H. Edwards, J. J. Kimsey, Sam Kimzey, for plaintiff.

G. S. Kytle, Underwood & Henderson, W. A. Charters, for defendant.

RUSSELL, C. J.  The suit was upon two contracts in which Power agreed to pay fifty dollars provided the Gainesville & Northwestern Railroad Company, along a specified route to be built from Gainesville to Robertstown, ran a regular passenger-train within two years from the date of the contract.  The contracts of the various subscribers provided that the makers should give notes, "one-half to be paid in 30 days and the other one-half to be paid within six months" after the first passenger-train had been operated on the railroad, but Power did not give the notes.  The precise language of the condition of the contract was as follows:  "The amount herein subscribed shall be binding upon us when the first passenger-train shall have been operated between the said Robertstown and the Gainesville Midland railroad station at Gainesville on a fixed passenger schedule, provided the same be done within two years from this date."  According to the uncontradicted evidence, the Gainesville & Northwestern Railroad Company operated a train which carried passengers and which was provided with a passenger-coach, with separate compartments for white and colored, some months before the two years expired, but the train to which the passenger-coach was attached also carried freight-cars and received and delivered freight at certain stations.  The train had a fixed passenger-schedule, though there was some testimony that, perhaps due to the delivery of freight, the train was sometimes behind time in reaching designated stations.  At the conclusion of the evidence the judge directed a verdict for the plaintiff, for the principal amount of the contract and interest at seven per cent.  Exception is taken to the verdict and to the direction of the verdict.

It seems plain from the evidence that a regular passenger-schedule had been fixed prior to the running of the first train, and, so far as appears, the first train was used exclusively for passengers; and it may be that for that reason only the court would have been authorized to direct the verdict.  However, we do not place our ruling upon that ground, but prefer the construction of the con-

tract which involves the idea that the defendant agreed to pay the amount stipulated with a view to receiving the benefit of the enhancement of his property and increase of his conveniences dependent upon the continuance of the regular passenger service for which he contracted. In that view of the case, the real question involved is whether the term "passenger-train" can only be applied to a train devoted exclusively to the transportation of passengers, or whether (so far as the convenience to which we have referred is concerned) a train is not still a passenger-train, if it has all the facilities and conveniences for passengers which the law requires, even though the carrier may transport at the same time and on the same train shipments of freight. There is no conflict in the evidence in this case as to the physical facts relating to the train in question, though the defendant gave it as his opinion that it was not, strictly speaking, a passenger-train; and therefore only a question of law is presented.

The contract required the plaintiff to operate a regular passenger-train from Gainesville to Robertstown within two years. It ran a train which provided for the carriage of passengers and which actually carried passengers within the time stipulated in the contract. But the evidence shows that the train also carried freight-cars and transported and delivered freight. Upon this fact the defendant in the lower court, plaintiff in error here, bases the contention that the contract was not complied with on the part of the obligee, and that by reason of this non-compliance he as obligor is released. So far as our opportunity for investigation has extended, we have been unable to find a case in which it has been decided whether a train which carries both freight and passengers comes under the definition of a passenger-train. It is true that in certain Illinois cases, construing a statute of that State which requires that passenger-trains stop at county sites, the courts held that all trains engaged in carrying passengers, running regularly every day upon an advertised time card of the company and equipped as all other passenger-trains, were passenger trains. Cleveland &c. Ry. Co. *v.* People, 175 Ill. 359 (51 N. E. 842); Illinois Central R. Co. *v.* People, 143 Ill. 434 (33 N. E. 173, 19 L. R. A. 119); Chicago & Alton R. *v.* People, 105 Ill. 657, 659. In the latter case it was held that the enactment in question would not include a freight-train or an excursion train or a special train. The point now before us

does not seem to have been decided in this State. In *Travelers Insurance Co.* v. *Austin,* 116 *Ga.* 264 (42 S. E. 522, 59 L. R. A. 107, 94 Am. St. R. 125), it was held that "a coach specially equipped as a pay-car, and not a vehicle for the transportation of passengers," was not a passenger-car, although it had formerly been used as such and was capable of being so used again. But, considering that the evident purpose of all those who entered into such contracts as that of the defendant was to obtain conveniences of transportation and the enhancement of values which experience has shown to follow railroad development, it is apparent that the contract would be complied with if the railroad was built within the time specified and if provision was made for supplying the conveniences and facilitating the enhancement to which we have referred. It would matter but little if freight was transported at the same time and on the same train with passengers, barring the slight delays at stations for the delivery of freight, if the greater object of enhancing the value of the defendant's property and providing him with a speedy and more convenient means of transportation was afforded. In Chicago Great Western Railroad *v.* St. Paul Union Depot Co., 68 Minn. 220 (71 N. W. 23), it was held that "mixed trains, made up in part of a passenger equipment and in part of freight-cars, used for the transportation of passengers, are passenger-trains" within the meaning of the terms of a contract giving the railroad company depot facilities for passenger-trains. 6 Words & Phrases, 5227. In State *v.* Missouri Pacific R. Co., 219 Mo. 156 (117 S. W. 1172), the Supreme Court reversed the judgment of the lower court, which had upheld a conviction of the railroad company under a statute requiring all railroads "to run at least one regular passenger-train each way every day over its lines." It appeared that the railroad, on one of its branch lines, ran a train "equipped with an ordinary passenger-coach and also a car divided into compartments, designed to carry baggage in one compartment, mails in another, and passengers in another, and . . running on a published schedule as to time, but [that] in addition to those cars the train contained two or more freight cars." The Supreme Court held that such a train was a passenger-train, and that if the legislature had intended the train to be a train composed exclusively of passenger-cars, it would have said so.

The contract was for the construction of the trial court, and we

think it was properly construed. As a citizen and a property holder, the defendant was to acquire a benefit upon the building of the railroad, and the railroad, induced by this subscription and others similar, spent large sums of money, and the subscribers received the benefit of the conveniences and enhancement which were contemplated by the parties.                    *Judgment affirmed.*