[S. F. No. 1048. Department One.—July 18, 1898.]

## MARY I. BERLINER, Appellant, v. TRAVELERS' INSURANCE COMPANY, Respondent.

Insurance—Exceptions in Policy—Forfeiture.—Exceptions in a policy of insurance are to be construed most strongly against the insurer and in favor of the insured, and no term or condition not expressed in the policy can be imported therein by implication to work a forfeiture, and relieve the insurer from liability.

Id.—Accident Insurance—Death of Passenger Riding upon Locomotive. A policy of accident insurance providing for double insurance if the injuries causing the death were sustained while riding as a passenger in any passenger conveyance using steam as a motive power, but excepting accident or death resulting wholly or partly from being in or on any such conveyance not provided for the transportation of passengers, is to be construed as covering the death of the insured resulting from the wrecking of a passenger train, while he was traveling thereon as a passenger and was temporarily riding upon the locomotive, and as providing for double insurance on account thereof.

Id.—Locomotive Part of Conveyance.—A passenger train is to be considered as composed of the locomotive and the cars, forming a conveyance for the transportation of passengers, of which the locomotive is a part.

Id.—Construction of Policy—Character of Passenger Preserved.—The policy is not to be construed as excluding the insured as a passenger from any part of the conveyance, no apt words having been employed to create such exclusion; and a passenger riding upon the locomotive attached to the passenger train at the request of an officer of the road, does not thereby lose his character as a passenger.

Id.—Extrahazardous Occupation or Exposure.—A provision in the policy for diminished insurance in case of injury in any occupation or exposure more hazardous than that given in the policy refers only to an extrahazardous employment or business, and is not to be construed as referring to individual acts of hazardous exposure.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion.

Daniel Titus, for Appellant.

Olney & Olney, for Respondent.

HAYNES, C.—Action upon a policy insuring George Berliner, the husband of plaintiff, against death caused by accident. At the conclusion of plaintiff's evidence defendant moved for a nonsuit, the motion was granted, and from the judgment entered thereon the plaintiff appeals.

Said policy insured said Berliner against loss of time resulting from bodily injuries effected through external, violent and accidental means, and classifies the injuries and the compensation for loss of time. It then provides: "*e.* Or if death results from such injuries alone within ninety days, will pay ten thousand dollars to Mary I. Berliner, his wife, if surviving; in event of her prior death, to the legal representatives or assigns of insured. *f.* If such injuries are sustained while riding as a passenger in any passenger conveyance using steam, cable, or electricity as a motive power, the amount to be paid shall be double the sum above specified. Provided: If insured is injured in any occupation or exposure classed by this company as more hazardous than that here given (that of mining expert), his insurance shall only be for such sums as the premium paid by him will purchase at the rates fixed for such increased hazard."

The policy then proceeds to qualify its liability by specifying what is not covered by it as follows:

"This insurance does not cover disappearance, . . . . nor accident nor death, . . . . resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected: Disease or bodily infirmity, . . . . ; violating law; voluntary exposure to unnecessary danger; . . . . ; entering or trying to enter or leave a moving conveyance using steam as a motive power (except cable and electric street cars), being in or on any such conveyance not provided for transportation of passengers, or on a railway bridge or roadbed (railway employees excepted)."

The insured received injuries in a railway accident in Mexico, from which he died four days afterward. The only evidence as to the circumstances connected with the accident was the testimony of S. W. Ferguson, who accompanied Mr. Berliner to Mexico and was traveling with him at the time of the accident.

The witness and Mr. Berliner were invited by the superintendent of the railway to go from the city of Mexico to Puebla

and return.  Mr. Cokefield, superintendent of motive power on that road, an old acquaintance of Mr. Berliner, was with the party.  On the return trip the train consisted of a locomotive, a baggage car and three or four passenger cars, and the superintendent's car, which was at the rear end of the train.  While at a station Mr. Cokefield invited Mr. Berliner to go with him to the engine that he might better see the country, and they started toward the engine, and the witness returned to the superintendent's car.  In going down the grade the train acquired a great velocity, and, leaving the track, was wrecked.  The engineer, fireman, and conductor were killed, and he thought about a half dozen of the passengers.  He found Mr. Berliner in the wreck of the engine, near the firebox, and burned by escaping steam, and believed Berliner was on the engine at the time of the accident.  On cross-examination he testified that he advised Mr. Berliner not to go on the engine, that he would get his clothes dirty, that he could see as well from the car, and that he thought it was not a safe place, but that he might or might not have used the word "safe," that the conversation was jocular, but he desired to detain him.

The foregoing is the substance of the testimony relating to the accident.

The ground of the motion for a nonsuit was: "That the contract itself did not provide for the death of a party by an accident while riding upon a locomotive, but only in a conveyance intended for passengers."

Assuming that Mr. Berliner was upon the engine at the time of the accident, and we think the court might properly find that he was, defendant's contention is that Mr. Berliner was at the time of the accident on "a conveyance not provided for the transportation of passengers," and that therefore the defendant is not liable; while appellant contends that the train on which the insured was riding was a regular passenger train composed of a locomotive and cars, and formed a conveyance for the transportation of passengers, and that the policy did not exclude him from any part of it.

It is well settled that policies of insurance should be liberally construed in favor of the insured; that where its terms permit of more than one construction that will be adopted which sup-

ports its validity. In *Equitable etc. Ins. Co. v. Osborn*, 90 Ala. 201, 207, it was said: "Exceptions of this kind are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary, especially in modern times, to circumvent the ingenuity of insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy."

In *Accident Ins. Co. v. Crandall*, 120 U. S. 527, it was held that "a policy of insurance against 'bodily injuries, effected through external, accidental, and violent means,' and occasioning death or complete disability to do business, and providing that 'this insurance shall not extend to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by suicide, or self-inflicted injuries,' covers a death by hanging one's self while insane." It was there said that "the insane suicide no more dies by his own hand than the suicide by mistake or accident"; and that the words "bodily infirmities or disease" do not include insanity, and that it is "the fundamental rule of interpretation that policies of insurance are to be construed most strongly against the insurers who frame them." To this we may add that the general rule is that exceptions and conditions are to be construed strictly against the party in whose favor they are made.

In a New York case it was said: "It has become a rule of law that if it be left in doubt whether words of the contract were used in an enlarged or restricted sense, other things being equal, the construction will be adopted which is most beneficial to the promisee." (*Darrow v. Family Fund Soc.*, 116 N. Y. 537; 15 Am. St. Rep. 430.)

In *Healey v. Mutual etc. Assn.*, 133 Ill. 556, 23 Am. St. Rep. 637, it was held that a death caused by accidentally taking and drinking poison is a death produced by bodily injuries received through external, violent, and accidental means.

Many other cases might be cited illustrating and applying the rule of construction above stated, but the rule is so well settled that we deem it unnecessary.

The policy here in question, though of a preferred class, was not special, covering only accidents to the insured while en-

gaged in a designated employment, pursuit, occupation, or situation, but covered any possible accident which might happen to any one under any or all circumstances, provided it did not fall within an exception expressed in the policy.

The term "conveyance" applies as well to the means of transporting freight as of passengers, and in the clause exempting the insurance company from liability for accidents occurring in "entering or trying to enter or leave a moving conveyance using steam as a motive power" is so applied; while the clause here under consideration distinguishes a "conveyance provided for the transportation of passengers" from those used for the transportation of freight. Neither clause specifies railroad trains, and each includes as clearly vessels propelled by steam. If the insured had met with an accident upon a passenger steamer instead of a railroad train, upon what part of the vessel must he have been at the time of the accident to be within the protection of his policy? Must he be seated in the cabin, or occupy a stateroom? The policy does not say so. It restricts him to no part of the vessel, and therefore if the insurance company sought to escape liability by showing that at the time of the accident he was not in the cabin or a stateroom, it must import into the contract a qualification or provision which is not expressed or even implied.

That the locomotive is part of the "conveyance" provided for the transportation of passengers upon a railroad is not disputed. If the deceased had been killed in trying to enter or leave the engine of a freight train, the defendant here would hardly concede its liability upon the ground that it was no part of "a moving conveyance," and therefore not within the clause exempting it from liability. Upon the theory that the engine is not part of the conveyance, it would follow that if A were killed in attempting to get on a car of a moving passenger train the insurance company would not be liable, while if B were killed in attempting to get upon the engine of the same train at the same moment the insurer would be liable.

If it had been intended to restrict the insured to any particular part of the conveyance, apt words to express such intention could have been readily found and used. As, for example, in *Hull v. Equitable etc. Assn.*, 41 Minn. 231, the policy contained the following provision:

"Standing, being or riding upon the platform of moving railway coaches (other than street cars), or riding in any other place not provided for the transportation of passengers, . . . . are hazards not contemplated or covered by this certificate."

The same provision is found in the policy considered in *Anthony v. Mercantile etc. Assn.*, 162 Mass. 354, 44 Am. St. Rep. 367; and a similar provision is found in a policy issued by still another company.   (See *Sawtelle v. Railway etc. Assur. Co.*, 15 Blatchf. 216.)

That "a conveyance using steam as a motive power" includes railroad trains cannot be controverted.   If then we insert "railroad trains" for or instead of conveyance, the meaning becomes clear.   Thus: "Entering or trying to enter or leave a moving railroad train (except cable and electric street cars), being in or on any such moving railroad train not provided for transportation of passengers, or on a railroad bridge or roadbed (railway employees excepted)."   Thus paraphrased the only distinction made is in the character of the trains, and not as to different parts of a train.   In the first clause, in regard to entering or leaving trains, all trains are included; while under the second clause passenger trains are distinguished from freight, repair, wrecking and other trains "not provided for the transportation of passengers." These exceptions, therefore, literally interpreted, have no application or reference to passengers or passenger trains except as to entering, or trying to enter or leave any train, whatever its character, while in motion, and therefore some term or condition not expressed in the policy must be imported into it to work a forfeiture and relieve the defendant from liability, and that is not permissible.

It follows from this conclusion that plaintiff's right to recover under clause "*e*" or "*f*" of the policy is clear, unless such right is barred by No. 1 of the provisos.   That proviso is as follows: "If insured is injured in any occupation or exposure classed by this company as more hazardous than that here given, his insurance shall be only for such sums as the premium paid by him will purchase at the rates fixed for such increased hazard."

In *Stone v. United States Casualty Co.*, 34 N. J. L. 371, a similar provision in an accident policy was considered.   It was

there said: "The injuries excluded from the compensation of the policy are described as those that are 'received in any employment, or by any exposure either more hazardous in itself or classified by the company as more hazardous.' These terms, literally rendered, require that the assured, to come within their effect, must, at the time of the injury, be in an employment more dangerous than his own. The language has reference to employments, and not to individual acts. It is true that a certain degree of ambiguity is introduced by the expression 'other exposure,' but looking at the body of the policy we find these terms used in the sense of the risks arising from a business or occupation. By adhering to the literal signification of the terms employed, these indorsements prefixed to the several classes of employments lose all force as independent stipulations, and serve the simple purpose of graduating such employments for the service of that provision of the policy which prohibits the assured from passing, at his own option, from one business to another. Understood in this view they are properly a part of the classifications, but if they are to be received as containing new terms of the contract, they are entirely out of place. If the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, that in such event he could claim nothing under his policy, it was easy for them to do so in plain language. . . . . A qualification so restrictive of the rights of the assured ought not to be admitted unless the terms of the indorsement will bear no other rational interpretation."

In that case the occupation of the insured was stated to be that of a teacher. While unemployed he was superintending the erection of a building for himself, and fell from the building by the breaking of a joist, and was killed, and the judgment against the company was affirmed.

In the case at bar the policy did not provide that it covered only those accidents which might occur to the insured while actually engaged in the direct duties of a mining expert, but covered all accidents not excluded by the terms of the policy, the occupation being inserted only to show that it was within a

specified class of risks.  See upon this point, and supporting the case last above cited, *Provident Life Ins. Co. v. Fennell*, 49 Ill. 180; *North America Life etc. Ins. Co. v. Burroughs*, 69 Pa. St. 43; 8 Am. Rep. 212.

Under the evidence contained in the record I think it perfectly clear that the plaintiff was at least entitled to judgment for ten thousand dollars under clause "*e*" of the policy, and the only remaining question is whether she was entitled to judgment for twenty thousand dollars under clause "*f*," which provides:

"If such injuries are sustained while riding as a passenger in any passenger conveyance using steam, cable, or electricity as a motive power, the amount shall be double the amount above specified."

If Mr. Berliner had been riding on the train in any other capacity than that of a passenger, that is, as an employee of the railroad company, or an express or mail agent, or a tramp stealing a ride upon a brake beam, the defendant would not be liable under clause "*f*." But he occupied no such relation to the railroad company or the train. Though upon the engine, he was a passenger. That he did not lose his character as a passenger by going upon the engine at the request of an officer of the road, see *Lake Shore etc. R. R. Co. v. Brown*, 123 Ill. 186; 5 Am. St. Rep. 510; *McGee v. Missouri Pac. Ry. Co.*, 92 Mo. 208; 1 Am. St. Rep. 706; *Nashville etc. R. R. Co. v. Irwin*, 3 Am. & Eng. R. R. Cas. 465. These were cases that involved the liability of the railroad company for injury to its passengers while rightfully upon the engine, and were not cases of accident insurance; but the word "passenger" as here used is evidently intended to designate the character or relation the insured sustained to the proprietor of the conveyance, and are therefore in point.

That the defendant cannot import into this clause of the policy conditions as to the part of the conveyance in which the insured must be, and thus by construction work a forfeiture, need not be further discussed. All that is required is that the insured shall be "riding as a passenger" in any passenger conveyance using steam, cable, or electricity as a motive power.

. That portion of the judgment from which the present appeal is taken should be reversed.

Britt, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion that portion of the judgment from which the present appeal is taken is reversed.                    Garoutte, J., Harrison, J., Van Fleet, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.