# STANDARD ACCIDENT INS. CO. OF DETROIT, MICH., v. HITE.

## No. 2514.  Opinion Filed May 6, 1913.

### (132 Pac. 333.)

1. **INSURANCE—Accident Insurance—"Used for Passenger Service."** An insured, under an accident policy which provided that no benefits would be paid for injuries, resulting fatally or otherwise, received while the insured was on a locomotive, freight car, or caboose used for passenger service, was killed in a train collision while on a caboose attached to a through stock freight running as an extra between Chickasha and Kansas City. At the time of his death the insured was in charge of cattle being transported to market under a live stock shipping contract. The only persons permitted to be aboard the caboose were railway employees and drovers in charge of live stock shipments. Held, that the caboose on which the insured was riding at the time of his death was not "used for passenger service."

2. **SAME—Construction of Contract.** The words "while on a caboose," as above used, are subject to the qualifying and concluding provision "used for passenger service," and should be so construed.

3. **SAME—**Under said policy it was not the kind of car or the fact that the plaintiff may have been a passenger that controls, but the fact that the caboose was not at the time engaged in passenger service within the common and ordinary meaning and acceptation of that term.

4. **SAME—**Treating the insured, in his relation to the railway company, as a passenger on one of its trains, it does not follow, in an action on an insurance policy, that the caboose in which he was riding was at the time being used for passenger service.

5. **SAME—**If a policy of insurance is susceptible of two constructions, that one is to be adopted which is more favorable to the assured.

(Syllabus by Sharp, C.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Boone D. Hite, administrator of the estate of J. B. McCarthy, against the Standard Accident Insurance Company of Detroit, Mich. Judgment for plaintiff, and defendant brings error. Affirmed.

Vol. 37—20.

*Welborne & McCalla,* for plaintiff in error.

*McKnight & Heskett* and *Bond & Melton,* for defendant in error.

Opinion by SHARP, C. On the 20th day of November, 1909, at Chickasha, Okla., the plaintiff in error, for a valuable consideration, executed and delivered to J. B. McCarthy a contract of insurance good for four days from date of issue, whereby it agreed to pay to the executors, administrators, or assigns of said J. B. McCarthy $2,500, providing he (the said J. B. McCarthy) should receive bodily injuries during the term of said insurance, effected solely by external, violent, and accidental means, which should, independently of all other causes, within 90 days result in his death. On the 21st day of November, 1909, the insured received bodily injuries which were effected solely by external, violent, and accidental means, and from which injuries, independent of all other causes, he immediately and on the same day died; said accident being caused by a passenger train colliding with a caboose attached to the rear end of a freight train, the insured at the time being in said caboose. At the time, both of the issuance of the policy and of the accident mentioned, the insured was a drover in charge of cattle being shipped over the line of the Chicago, Rock Island & Pacific Railway Company, from Anadarko, Okla., to Kansas City, Mo. The case was tried below before the court upon an agreed statement of facts, the policy or ticket of insurance, and the live stock contract covering the shipment of cattle.

The pertinent paragraphs of the statement of facts are as follows:

"Sixth. That the said J. B. McCarthy and the said six other persons, who were on said caboose at the time of such injury, were riding on said caboose and upon said train exclusively by virtue of said live stock contracts, and that they had no other or further right to be on said caboose or to ride on said train, except under and by virtue of the provisions of said live stock contracts, but defendant does not admit that all the provisions and conditions in said live stock contracts are or were

binding on said J. B. McCarthy and the other persons riding on same.

"Seventh.  It is further agreed that the said freight train and the caboose on which the said J. B. McCarthy and the said six other persons were riding as aforesaid was owned, operated, and controlled by the Chicago, Rock Island & Pacific Railway Company, and that the road over which said freight train was being operated was owned and controlled by the said railway company; that said freight train was composed of about fifteen cars of cattle, two of which said cars of cattle were owned by the said J. B. McCarthy, having been shipped by him on the 20th day of November, 1909, from Anadarko, Okla., for Kansas City, Mo., through Chickasha, Okla., under and by virtue of said live stock contract heretofore referred to, a copy of which is attached to the defendant's answer and marked Exhibit A; that said J. B. McCarthy and the said six other persons who were on said caboose as aforesaid had ridden under said live stock contracts on said train and in the caboose thereof from Chickasha, Okla., as far as El Reno, Okla., a distance of about 33 miles, at the time of the accident heretofore referred to; and that said train and caboose had not reached its destination at Kansas City, Mo., at the time of said accident, but that at said time the destination of said train being Kansas City, Mo., about 300 miles from El Reno, Okla.

"Eighth.  That said train and said caboose was only used for the transportation of cattle and the transportation of the employees of said railway company, together with the regular train crew in charge of said train, and for the transportation of such other persons as had live stock on said train under and by virtue of live stock contracts, in substance identical with the one on which the said J. B. McCarthy was riding at the time of said injury.

"Ninth.  That, under the tariffs, rules, and regulations of the said Chicago, Rock Island & Pacific Railway Company, the said caboose upon which the said J. B. McCarthy was riding at the time of said injuries was not authorized or permitted to carry persons thereon, except persons in charge of live stock riding on contracts identical in substance with the one on which the said J. B. McCarthy was riding at the time of said injury, and employees of said railway company, and the regular train crew in charge of said train.

"Tenth. That under the tariff, rules, and regulations of the said Chicago, Rock Island & Pacific Railway Company, and other railroads operating in the state of Oklahoma, in force at the time said injuries were received, the only caboose upon which persons, other than the regular train crews operating the train, to which said caboose was attached, and the employees of said railway companies and persons riding on live stock contracts, such as the said J. B. McCarthy and the said six other persons were riding on at the time of said injury, were permitted to ride, was a caboose attached to the second section of a local freight train, and that on such caboose, attached to the second section of a local freight train, persons were generally permitted to ride on payment of the regular passenger fare or upon regular passenger tickets issued by such railway companies."

The defendant insurance company denied liability by reason of a provision in paragraph E of the policy, which reads:

"This ticket is issued by the company and accepted by the insured with the understanding and agreement that no benefits will be paid for injuries, resulting fatally or otherwise, received under or in consequence of any of the following conditions: (1) While on a locomotive, freight car or caboose used for passenger service.    *    *    *"

As stated by counsel for plaintiff in error, the sole question presented for our consideration is: Was the caboose in which J. B. McCarthy was riding at the time he met his death "used for passenger service?" It will be observed from the foregoing statement that the train to which the caboose was attached was a through freight train, being extra No. ———, running from Chickasha to Kansas City; that the only freight being transported was live stock, consisting of about fifteen cars of cattle; and that no person was riding thereon, except the train crew, the insured, and six other drovers, all riding by virtue of similar live stock contracts, issued by the railway company, for the purpose of taking care of the live stock in their charge. Under the tariffs, rules, and regulations of the railway company, the caboose on which the insured was riding at the time the injuries resulting in his death were sustained was not authorized or permitted to carry persons thereon, except such as were

in charge of live stock, riding on contracts identical in substance with the one on which the insured was riding, and the railway company's employees. Under the tenth paragraph of the stipulations it appears that, according to the tariffs, rules, and regulations of the railway company, the only caboose upon which other persons, other than railway employees and persons riding upon live stock contracts, such as the said J. B. McCarthy and the other drovers, were permitted to ride was one attached to the second section of a local freight, and that on said caboose attached to said second section of said local freight persons in general were permitted to ride upon payment of fare. In our opinion the caboose on which the insured was riding at the time of his death was not then being used for passenger service within the meaning of the insurance contract.

A caboose attached to a through freight used exclusively for the transportation of live stock to market cannot, while en route, be said to be used for passenger service, where no one but the train employees and shippers in charge under live stock contracts, together with railway employees, are permitted to be aboard. Had the policy provided that if death ensued from injuries sustained while on a caboose, without the qualifying clause "used for passenger service," it is clear that no liability would attach. It is not the kind of car, but the character of the service in which it was at the time engaged that we are to consider. It is a matter of common knowledge that there is attached to all freight trains a regular or improvised caboose for the necessary use and convenience of a part of the train crew. So long as no one but the railway employees are permitted to ride in such a caboose, no question that the caboose was used for passenger service could arise. It is only when others than employees are rightfully aboard such car that the question is presented. Assuming, as we think the great weight of authority holds, that a person rightfully riding on a drover's pass is a passenger (Elliott on Railroads [2d Ed.], sec. 1605), it does not necessarily follow that the train or car conveying him or on which he is a passenger is at the time used for passenger service.

The fact, therefore, that the deceased was rightfully in the caboose, under the terms of a livestock contract, for the purpose of looking after and caring for the cattle being transported to market, does not change the character of the service in which the caboose was at the time being used. The caboose was a necessary part of the train, and the primary, if indeed not the sole, business in which the particular train was at the time engaged was freight service as distinguished from passenger service. *Berliner v. Travelers' Ins. Co.*, 121 Cal. 458, 53 Pac. 918, 41 L. R. A. 467, 66 Am. St. Rep. 49. That live stock attendants' were in the caboose was a mere incident to the general use and purpose for which the caboose was being employed. Provision for · their care and comfort was necessary as a part of the contract for shipment of the live stock in their charge. The train was in no sense a "mixed train," carrying both freight and passengers, as the term is generally understood. The equipment consisted of freight cars and caboose, such as is generally used in the freight service. It was a through stock freight running as an extra, and did not, neither was it authorized or permitted under the tariffs, rules, and regulations governing the train's operations to, carry persons thereon, except those in charge of live stock riding on contracts identical in substance with that of the insured, and· employees of the railway company, and the regular crew in charge of the train. Only by virtue of a contract for live stock shipment could other than railway employees acquire a right of carriage upon said caboose. The public in general, wishing transportation, had no right to be upon said car. Opportunity for the carriage of the public, in addition to the regular passenger trains, was afforded by the second section of the local freight. No passenger fare was paid by the insured, no passenger earnings accrued to the railway company from the operations of the train.

The case of *Aetna Life Ins. Co. v. Frierson,* 114 Fed. 56, 51 C. C. A. 424, cited and relied upon by counsel for plaintiff in error, is not in conflict with our conclusions. In the contract

of life insurance under consideration by the court in that case, it was provided that the policy insured the principal sum of $5,000, but provided for the payment of double that sum if the injuries from which death ensued were sustained while riding as a passenger in any passenger conveyance using steam, cable, or electricity as a motive power. Among other things it was said in the opinion of the court:

"The Jessie at all times continued to be under the control and management of the navigation company. The Frierson party had no exclusive rights, for she was under no charter, and she had on board a passenger who had paid a separate fare, not being a member of the Frierson party nor within the terms of the contract under which he was being carried. The Jessie was a passenger conveyance, whose motive power was steam. Frierson was not at the time a servant or in the employment of the owners or navigators of the Jessie. He was riding on the boat under a contract based upon a good consideration, by which the Columbia Navigation Company undertook to carry him up the Kuskokwim river. These facts constitute him a passenger."

McCarthy, like Frierson, was a passenger; the latter was a passenger on a passenger conveyance, while the former was not a passenger on a caboose used for passenger service within the general meaning and acceptation of the term. There it was not provided that "the passenger conveyance" should at the time be employed "in passenger service," but simply that it should be "a passenger conveyance" whose motive power was steam. It will be noted that the court there affirmed the judgment of the Circuit Court, permitting the recovery of a double liability and observed:

"That the Jessie was not 'a public conveyance in the usual lines of travel as a common carrier of passengers' may be true. But, if the insurance company intended to limit the benefits of its contract to passengers who travel 'in conveyances operated in the usual lines of travel as common carriers,' it should have so stipulated."

With equal force we might say that if it was the purpose of the insurance company to limit the right of recovery to those riding on a caboose, regardless of the service in which it was at

the time engaged, it should have so provided. But even were we to consider that the meaning of the provision in the light of the facts before us was in doubt (which we do not), it would be our duty to give to the policy that construction which would give it effect rather than destroy it; the rule being that where the meaning of a policy of insurance is ambiguous, or if so drawn as to be fairly susceptible of different constructions, it will be construed strictly against the insurer, and that construction adopted which is most favorable to the insured. *Taylor v. Ins. Co. of North America,* 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; *Capital Fire Ins. Co. v. Carroll,* 26 Okla. 286, 109 Pac. 535; *Southern Surety Co. v. Tyler & Simpson,* 30 Okla. 116, 120 Pac. 936.

In this connection it was said by Mr. Justice Harlan, in *Travelers' Ins. Co. v. McConkey,* 127 U. S. 668, 8 Sup. Ct. 1362, 32 L. Ed. 308:

"Such being the contract, the court must give effect to its provisions according to the fair meaning of the words used, leaning, however, where the words do not clearly indicate the intention of the parties, to that interpretation which is most favorable to the insured."

A caboose attached to a through freight, running as an extra, made up exclusively of live stock being shipped to market, is not being used for passenger service within the common and ordinary meaning and acceptation of that term, and as these words are ordinary words, and the meaning of which is plain, they must be understood and applied accordingly. We therefore conclude, as did the learned trial judge, that the insured at the time of his death was not on a caboose used for passenger service within the meaning of paragraph E of the accident policy.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.