## MARTIN v. CHICAGO, R. I. & P. RY. CO.

### No. 4093.    Opinion Filed April 27, 1915.

#### (148 Pac. 711.)

1. **CARRIERS—"Passenger for Hire"—Caretaker.** A person in charge of live stock being transported by a railway company at an agreed rate, under a live stock contract, is a passenger for hire.

2. **CARRIERS—Action by Passenger—Injuries from Collision.** An action for damages by such passenger for personal injuries inflicted by the negligent acts of defendant in running its switch engine at a high rate of speed into the car in which he was at the time attending such live stock is an action sounding in tort.

3. **CARRIERS—Passenger's Action for Tort—Contract Limitations—Application.** Such action for damages not arising under the contract of shipment, any stipulation therein limiting the time in which suit must be brought for the recovery of any claim by virtue of such contract does not operate to shorten the statutory period.

(Syllabus by Bleakmore, C.)

*Error from Superior Court, Pittsburg County;*

*W. C. Leidtke, Judge.*

Action by G. W. Martin against the Chicago, Rock Island & Pacific Railway Company. Verdict for plaintiff, new trial granted, and plaintiff brings error. Reversed.

*J. E. Whitehead* and *C. R. Barry,* for plaintiff in error.

*C. O. Blake, R. J. Roberts* and *W. H. Moore,* and *Wright & Boyd,* for defendant in error.

BLEAKMORE, C.   This action is brought by the plaintiff in error against the defendant in error to recover damages for personal injuries. The parties will be referred to herein as they appeared in the trial court.

It is alleged in the petition:

"That on or about the 24th day of February 1908, this plaintiff entered into a contract with the St. Louis & San Francisco Railway Company, at Blytheville, in the state of Arkansas, for the transportation of himself, his household goods, farming implements and live stock from Blytheville, in the state of Arkansas, to the city of McAlester, in the state of Oklahoma. Plaintiff chartered a car for an emigrant outfit, paying therefor the sum of $86. That under the terms of the said contract plaintiff's said property was to be transported over the lines of the said St. Louis & San Francisco Railway Company to Memphis, state of Tennessee, and from the city of Memphis, over, the Chicago Rock Island & Pacific Railway Company, to the city of McAlester, state of Oklahoma. That, under the terms of the said contract, this plaintiff was required to go with, the said car to look after feed and care for his said stock contained in the said car, and did go with the said car from Blytheville, state of Arkansas, to McAlester, state of Oklahoma. That when the said car arrived at McAlester state of Oklahoma, the said written contract so entered into as aforesaid was delivered to the defendant Chicago, Rock Island & Pacific Railway Company, to its agent in the city of McAlester, state of Oklahoma, and that therefore the said contract is not now in the possession of said plaintiff.

"That on or about the 25th day of February, 1908, as the plaintiff and his said property were being transported through the yards of the defendant Chicago, Rock Island & Pacific Railway Company, in the city of Little Rock, state of Arkansas, the said car was, by the defendant company, placed upon a switch or track in the said yards at Little Rock, and that while the same was standing upon the said switch or track, and while this plaintiff was in the said car feeding and caring for his said stock, the defendant, through want of due care and by gross negligence, by its agents and servants, ran a switch engine and box car at a high rate of speed into plaintiff's car, thereby knocking and crushing the said car against other cars, knocking this plaintiff down in the said car, and throwing farming implements, furniture, and live stock upon him, badly bruising and cutting him upon the head, back, neck, arms, and legs, and has thereby caused plaintiff to suffer great bodily pain and mental anguish. That the plaintiff was badly bruised in his chest and

lungs. That his ribs and collar bone were broken, and his breast badly mashed, bruised, and injured. That, by reason of this injury, this plaintiff continually spits blood, and is permanently injured through the breast, lungs, and back, that his health is greatly impaired, and that he is rendered incapable of earning a living. That, prior to the accident, plaintiff was a strong, robust, and healthy man, capable of performing any kind of manual labor.

"That the said injuries were received by the plaintiff without any fault or negligence on his part. That the same were the direct result of the carelessness and gross negligence of the defendant, by running said engine and car into the car occupied by this plaintiff, thereby damaging this plaintiff in the sum of $2,000."

Defendant answered by general denial, and further alleged:

"For further answer, defendant states: That the shipment of plaintiff's goods and the transportation of the plaintiff out of which grows the matters and things complained of in plaintiff's petition was upon a certain contract entered into on or about the 24th day of February, 1908, between the plaintiff and the St. Louis & San Francisco Railroad Company, a copy of which contract is hereto attached, made a part hereof, and marked for identification, 'Exhibit A.' That said contract, among other things, contains the following provisions, to-wit: 'It is mutually agreed that if the destination of the aforesaid cars be on the line of the St. Louis & San Francisco Railroad Company, then the St. Louis & San Francisco Railroad Company agrees to deliver same to consignee after payment of charges and surrender of contract; but if the destination of such cars be beyond the lines of the St. Louis & San Francisco Railroad Company, then the St. Louis & San Francisco Railroad Company agrees and each connecting carrier in turn is hereby authorized, to deliver said cars to connecting carrier for transportation under the terms stipulations, limitations and agreements, in respect of such further transportation, as may be agreed upon between the shipper and such connecting carrier or carriers. Provided, that if no other such contract be required or executed to cover the movements of the shipment over the line of any carrier in the route, then such carrier shall have the benefit of all the stipulations and conditions in this contract, it being understood that this contract is thereby adopted by the shipper and such carrier as the

contract providing for their mutual rights and obligations; but, nevertheless, each carrier in the route shall be liable only for loss or damage occurring on its own road.' That said contract, among other things, contains the following provisions, to-wit: '(14) That no suit or action against the party of the first part for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity, unless such suit or action be commenced within six months next after the cause of action shall accrue and should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.'

"Defendant further states that said contract was executed at Blytheville, Ark., in the state of Arkansas; that under and by virtue of the laws in force in said state, said fourteenth paragraph of said contract is valid and binding between the plaintiff and defendant in this action. Defendant further states that the plaintiff has not complied with the terms of this contract as found in the fourteenth paragraph thereof, in that no suit or action has been brought against the defendant and within the time agreed upon by the parties thereto, in that more than six months had elapsed between the accrual of the cause of action under said contract and institution of this suit.

"(For its third count the defendant pleads the same facts as set upon its second count, just quoted, but claims that the said shipment was an interstate shipment and within the rules and regulations and the laws of the United States, applicable to interstate commerce; and that the said contract is valid and binding between the parties, under the laws of the United States, applicable to interstate commerce. The plaintiff has failed to comply with the terms of said contract and is not competent to maintain this action for the reason that no suit was brought within the time, to wit, the term of six months agreed to between the parties in paragraph 14 of said contract.)"

The case was tried to a jury, and resulted in a verdict for plaintiff in the sum of $1,500, upon which judgment was rendered.

The court sustained defendant's motion and granted a new trial upon the grounds as set forth in the order, "that the court erred

in not sustaining the contention of the defendant that the provisions of the contract sued on, limiting the time in which action should be brought to six months, was binding upon the plaintiff," and plaintiff has brought the case here.

The sole point presented for our consideration (involving only a pure, unmixed question of law) is: Did the court below err in granting a new trial upon the grounds assigned, in its order?

It is the contention of defendant that its liability, if any, is that of an interstate carrier arising by virtue of the contract above set forth, and that the plaintiff, having failed to comply with its terms by bringing this action within six months, is barred from recovery; while the plaintiff contends that his cause of action is one *ex delicto,* entirely independent of such contract.

The primary purpose of the live stock contract (as it is designated) was to evidence the agreement between the railway company and plaintiff for the carriage of his personal property from Blytheville, Ark., to McAlester, Okla. In this respect, it is an interstate contract of shipment, and the validity of the stipulation therein limiting the time within which suit must be brought for any claim arising by virtue thereof, under the pleadings and evidence in this case, is to be determined under the common law, and does not involve a construction of the statutes of limitation of this state or of the state of Arkansas.

In *M., K. & T. R. Co. v. Harriman Bros.,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, it is said:

"It is conceded that there are statutes in Missouri, the state of the making of the contract, and the state in which the loss and damage occurred, and in Texas, the state of the forum, which declare contracts invalid which require the bringing of an action for a carrier's liability in less than the statutory period, and that this action, though started after the lapse of the time fixed by the contract, was brought within the statutory period of both states.

The liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack amendment of the Hepburn Act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. *Adams Exp. Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148 [57 L. Ed. 314, 44 L. R. A. (N. S.) 257]; *Michigan C. R. Co. v. Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192 [57 L. Ed. 417, Ann. Cas. 1914C, 176]. The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. *Adams Exp. Co. v. Croninger,* and *Michigan C. R. Co. v. Vreeland,* cited above; *York Mfg. Co. v. Illinois C. R. Co.,* 3 Wall. 107, 18 L. Ed. 170; *New York C. R. Co. v. Lockwood,* 17 Wall. 357, 21 L. Ed. 627; *Southern Exp. Co. v. Caldwell,* 21 Wall. 264, 267, 22 L. Ed. 556, 558; *Hart v. Pennsylvania R. Co.,* 112 U. S. 331 [5 Sup. Ct. 151] 28 L. Ed. 717."

Thus it is clear that, if plaintiff's cause of action arose by virtue of the contract of shipment, the limitation therein stipulated would control. But such contract had a secondary purpose, to wit, to create the relation of carrier and passenger between defendant and plaintiff. This doctrine has been announced by this court in *St. L. & S. F. R. Co. v. Nichols,* 39 Okla. 522, 136 Pac. 159, and *Standard Accident Ins. Co. v. Hite,* 37 Okla. 305, 132 Pac. 333, 46 L. R. A. (N. S.) 986.

In Moore on Carriers (2d Ed.) p. 1036, sec. 28, it is said:

"In contracts for the carriage of live stock, it is usually provided that the shipper or drover or some one or more persons representing or employed by him shall ride free to take charge of the stock, thus relieving the carrier from this duty, and such persons usually ride on a pass known as the drover's pass. These persons are in no just sense to be regarded as gratuitous passengers, and the courts do not so regard them, but hold them to be passengers for hire; the consideration for their passage being the

service .they render in taking care of the live stock, or the charge paid by the shipper of the live stock being as well for such passenger as for the carriage of the property itself."

The text is supported by a multitude of cases, among which are *R. R. Co. v. Lockwood,* 17 Wall. 357, 21 L. Ed. 627, *Ry. Co. v. Stephens,* 95 U. S. 655, 24 L. Ed. 535, and *Kirkendall v. Union Pac. R. Co.,* 200 Fed. 197, 118 C. C. A. 383; the latter containing a resume and collation of authorities.

Defendant in its brief very aptly says:

"Plaintiff's presence on the train was a mere incident to the freight shipment and was justified by the very contract which he now seeks to dispute."

That plaintiff was a passenger for hire, and rightfully in the car at the time of his injury, is clear.

In *Atl. & Pac. R. Co. v. Laird,* 164 U. S. 393, 17 Sup. Ct. 120, 41 L. Ed. 485, it is said:

"Looking then to the averments of the complaint, we find it stated that the defendants, as common carriers, jointly owned and operated a described line of railroad; that on November 3, 1890, the plaintiff was a passenger on a train of cars then being run by the defendants, which train was derailed and thrown from the track and the plaintiff injured. Was this an action *ex quasi contractu* as now claimed? * * *

"Though it is alleged that the plaintiff was the holder of and traveling upon a certain ticket, no undertaking or promise by the defendants was averred, nor is there any allegation of the breach of any undertaking or promise. The reference to the ticket, joined with the allegation immediately preceding it, that the plaintiff was a passenger on the described line of railroad, was evidently introduced by the pleader to show the existence of the relation of passenger and carrier between the plaintiff and the defendants. Because of such relation, the duty to exercise due care in the carriage of the passenger was imposed upon the defendants, and from the recital of the negligent acts committed arose the implication of the failure of the defendants to perform that legal duty. As said by Martin, B., in *Legge v. Tucker,* 1 Hurlst. & N. 500, 501: 'In the case of carriers, the custom of

the realm imposes on them a duty to carry safely, and a breach of that duty is a breach of the law, for which an action lies founded on the common law, and which does not require a contract to support it.'

"*Legge v. Tucker, supra,* was in form an action on the case for the negligence of a livery stable keeper in the care and custody of a horse. It was held that the foundation of the action was a contract, and that, whatever way the declaration was framed, it was an action for assumpsit. The line which distinguishes the case at bar from an action *ex quasi contractu* is thus expressed in the remarks of Watson, B., who said (page 502) : 'The action is clearly founded on contract. Formerly, in actions against carriers, the custom of the realm was set out in the declaration. Here a contract is stated by way of inducement, and the true question is whether, if that were struck out, any ground of action would remain. *Williamson v. Allison,* 2 East, 452. There is no duty independently of the contract, and therefore it is an action of assumpsit.'

"The doctrine is very clearly expressed in *Kelly v. Metropolitan R. Co.* (1895) 1 Q. B. 944, where the Court of Appeals held that an action brought by a railway passenger against a company for personal injuries caused by the negligence of the servants of the company, while he was traveling on their line, was an action founded upon tort. In reading the judgment of the court, A. L. Smith, L. J., said (page 947) : 'The distinction is this : If the cause of complaint be for an act of omission or nonfeasance which, without proof of a contract to do what has been left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.' "

In *Knuth v. Butte Elect. Ry. Co.* (C. C.) 148 Fed. 73, it is said:

"Plaintiffs may properly show that deceased was a passenger, to show the relationship of passenger and carrier, and that on account of such relationship a duty arose on defendants' part to exercise vigilance and care in carrying the passenger. This

duty, however, is imposed independently of contract, and for a breach of it action lies, and no contract is required to support it. *Atlantic & Pacific Railroad v. Laird,* 164 U. S. 393, 17 Sup. Ct. 120, 41 L. Ed. 485; *Guardian Trust Co. v. Fisher,* 200 U. S. 67, 26 Sup. Ct. 186, 50 L. Ed. 367.

"In *Doremus v. Root et al.* (C. C.) 94 Fed. 760, Judge Hanford, with remarkable terseness, stated the controlling propositions and rules which must be held applicable to the case at bar. He said: '(1) An action to recover unliquidated damages for a personal injury caused by negligence, although the negligence complained of amounts to a breach of contract on the part of the defendant, belongs to the class of cases denominated "actions *ex delicto.*" The tort is the ground of action, and the law of torts must govern the case.'"

In the instant case, while it is alleged that the plaintiff was the holder of the live stock contract and rightfully accompanying his property in accordance with its terms, there is no allegation of the breach of such contract. The gravamen of the petition is the negligent acts of the defendant in running the switch engine and box car at a high rate of speed into the car in which the plaintiff was then caring for his live stock—the failure of defendant to perform the duty imposed by law upon it to exercise due care for the safety of plaintiff, arising by reason of the relationship of carrier and passenger between it and plaintiff.

From the foregoing, we conclude that this is not an action for the recovery of any claim by virtue of the contract, but it is an action for damages on account of the negligence of defendant —an action sounding in tort—and, having been brought within the statutory period, the court below erred in granting a new trial, and its action therein should be reversed. The trial court is accordingly directed to vacate and set aside the order granting a new trial.

By the Court: It is so ordered.