## CEDERGREN v. MASSACHUSETTS BONDING & INS. CO.

## MASSACHUSETTS BONDING & INS. CO. v. CEDERGREN.

(Circuit Court of Appeals, Eighth Circuit. August 22, 1923.)

Nos. 6297, 6298.

**1. Insurance ⬅⇒515—Storm causing death of insured held a "cyclone," within the terms of the policy.**

A storm, shown by the evidence to be a rotary one, in which the wind blew spirally around a calm center of low atmospheric pressure, *held* a "cyclone," within the terms of a policy imposing double liability in case of death caused by a cyclone.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cyclone.]

**2. Insurance ⬅⇒146(3)—Policy construed most favorably to insured.**

If a policy of insurance is susceptible of two constructions, that one is to be adopted which is the more favorable to the insured, and this though a question of double liability may be involved.

**3. Insurance ⬅⇒646(6)—Plaintiff held to have burden of proving prior death of wife of insured under special beneficiary clause.**

Under a special beneficiary clause in an accident policy, providing for payment of a sum to insured in case of accidental death of his wife, the beneficiary, but that "in case of the prior death of the said insured the company shall not be liable under this part," in case of the death of both insured and his wife, the burden rests on plaintiff, in an action to recover on such provision to prove that the death of insured was not prior to that of his wife.

**4. Death ⬅⇒5—No presumptions of survivorship or simultaneous death in common disaster.**

Where two people meet death in a common disaster, there is no presumption either of survivorship or simultaneous death.

**5. Insurance ⬅⇒440—Policy expires with death of insured.**

Where a policy contained a supplement providing for payment of a sum to insured in case of accidental death of his wife, but that "this supplement goes into effect and expires simultaneously with said policy, to authorize recovery under the supplement, it must be proved that insured was living at the time of his wife's death.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by John Cedergren, as administrator of the estate of Magnus Peterson, deceased, against the Massachusetts Bonding & Insurance Company. From the judgment, both parties bring error. Affirmed.

Andrew Nelson, of Duluth, Minn. (John Cedergren, of Duluth, Minn., on the brief), for plaintiff.

R. L. Mayall, of Duluth, Minn. (C. O. Baldwin, Albert Baldwin, and D. S. Holmes, all of Duluth, Minn., on the brief), for defendant.

Before LEWIS and KENYON, Circuit Judges, and TRIEBER, District Judge.

KENYON, Circuit Judge. Magnus Peterson and his wife, Emma Peterson, employees on the steamer John Owen, went down with said

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

boat in a storm on Lake Superior in November, 1919. The Massachusetts Bonding & Insurance Company had issued an accident insurance policy on the life of Magnus Peterson, which provided for payment in case of his death by accident of the sum of $2,000, and, if death was caused by a cyclone, double the amount otherwise payable. The policy had attached to it what was known as a "special beneficiary supplement," which provided for payment to the insured of $2,000 upon the death of his wife, Emma Peterson, provided the injuries resulting in her death occurred during the life of said policy. The controversial parts of the beneficiary supplement are the following:

"The amount provided for loss of life of said beneficiary shall be payable to the insured under said policy, but, in case of the prior death of the said insured, the company shall not be liable under this part."

Further the supplement provided:

"This supplement goes into effect and expires simultaneously with said policy."

The said insurance company (whom for convenience we will designate defendant, and likewise for convenience will designate the administrator of the estate of Magnus Peterson, deceased, plaintiff) admitted its liability to the extent of $2,000. The dispute arises over the $2,000 claimed as double damages on account of death resulting from an alleged cyclone, and the $2,000 on the life of Emma Peterson for the benefit of Magnus Peterson. The District Court instructed the jury to return a verdict on the theory that the storm in which the boat went down was a cyclone, and also held that plaintiff could not recover the $2,000 claimed under the special beneficiary supplement. Plaintiff claims the storm that wrecked the boat was a cyclone. Defendant claims it was a tornado. From the holding of the court, both parties prosecute writs of error.

[1] As the question of the nature of the storm is involved in both writs we consider that first. The lexicographers and text-writers define "cyclone" as follows:

Webster's International Dictionary: "Cyclone. * * * A violent storm, often of vast extent, characterized by high winds rotating about a calm center of low atmospheric pressure. This center moves onward, often with a velocity of as much as twenty or thirty miles an hour."

Funk & Wagnalls' Standard Dictionary, Edition of 1903: "Cyclone 3. Popularly, any violent and destructive windstorm, especially (in the United States) a tornado."

Century Dictionary: "Popularly, a tornado (such as occurs in the Western States) or any destructive storm. * * * Any atmospheric movement gentle or rapid, general or local, on land or at sea, in which the wind blows spirally around and in toward a center."

17 Corpus Juris, page 691: "Cyclone. Any atmospheric movement, gentle or rapid, general or local, on land or at sea, in which the wind blows spirally around and in toward the center; an atmospheric disturbance extending over an area of one hundred to five hundred miles in diameter, characterized by a decrease of barometric pressure toward the center and by winds directed spirally inward; a rotary storm or whirlwind of extended circuit. In certain regions windstorms are designated as cyclones, which, passing through a narrow strip of country, more or less confined, with such resistless force as to twist, break, and uproot trees, unroof and turn over houses, and destroy property in their march, more or less eccentric in their movements; and it is not

too much to say that this designation is one of common acceptance among the people."

The question of what constitutes a cyclone was discussed by this court in the case of Maryland Casualty Co. v. Finch et al., 147 Fed. 388, 77 C. C. A. 566, 8 L. R. A. (N. S.) 308.

A tornado is somewhat different from a cyclone. It is defined as follows:

Webster's New International Dictionary (1922): "Tornado. 1. A thunderstorm; or, loosely, any violent windstorm. (Now rare.) 2. Hence (under the influence of the supposed derivation from L. tornare, to turn); Meteor. (a) The arched squall off the west coast of Africa in which the violent wind revolves beneath a broad arch of threatening clouds, analogous to the gust that precedes any severe thunderstorm. (b) A funnel-shaped cloud, like a waterspout, sand column, or dust whirl, with very violent and destructive eddies and whirls of wind, progressing in a narrow path for many miles over the land. It occurs in all parts of the Mississippi watershed. The wind is too violent to be measured, and the barometric pressure falls so rapidly that wooden structures are often lifted and burst open by the air confined within them."

Standard Dictionary, Edition of 1903: "A violent storm of small extent, usually occurring on the southeastern border of a cyclone, accompanied by rain or hail and often by powerful electric discharges; according to generally received ideas, having a rotary motion and accompanied by a funnel-shaped cloud."

38 Cyc. 407: "Tornado. A violent storm, distinguished by the vehemence of the wind and its sudden changes; a violent gust of wind, or a tempest distinguished by a whirling, progressive motion, usually accompanied with severe thunder, lightning, and torrents of rain, and commonly of short duration and small breadth."

There was no evidence introduced in this case on the part of the defendant as to the weather or the kind of storm. Plaintiff introduced Mr. Richardson, who lived at Duluth for 24 years and was a meteorologist of the United States Weather Bureau, a man of very broad experience, extending over a period of 36 years. He had recorded the velocity of this particular storm, and had the official data and records in his office describing the storm as a cyclone. He so characterized it on the witness stand. Witnesses who were on other boats testified to the intense velocity of the storm—some putting it as high as 80 miles per hour. Witness Morrison so testified; witness Carlson, 75 miles per hour. Witnesses testified that the barometer dropped suddenly; that the waves were between 20 and 30 feet high, and that it was as bad a storm as old mariners had ever seen on Lake Superior. The storm, as shown by the evidence, was a rotary one, in which the wind blew spirally around a calm center of low atmospheric pressure. It answered all the technical tests of a cyclone, as well as the common acceptation of the term.

[2] If it be claimed that the word "cyclone," as used in the policy, is at all ambiguous, then it is our duty to construe it most favorably to the insured. Maryland Casualty Co. v. Finch et al., 147 Fed. 388, 77 C. C. A. 566, 8 L. R. A. (N. S.) 308. The courts have held:

That insurance policies should be construed liberally in favor of the insured and their beneficiaries. Richards v. Standard Accident Ins. Co., 58 Utah, 622, 200 Pac. 1017, 17 L. R. A. 1183.

That the construction most favorable to the assured must be adopted as to insurance policies, for the language is that of the insurers. Joyce on Ins. § 222; Royal Insurance Co. v. Martin, 192 U. S. 149, 24 Sup. Ct. 247, 48 L. Ed. 385; Lefler v. New York Life Ins. Co., 143 Fed. 814, 74 C. C. A. 488.

That if a policy of insurance is susceptible of two constructions that one is adopted which is the more favorable to the assured. Standard Accident Ins. Co. of Detroit v. Hite, 37 Okl. 305, 132 Pac. 333, 46 L. R. A. 986, 990.

In Travelers' Insurance Co. v. McConkey, 127 U. S. 661, 666, 8 Sup. Ct. 1360, 1362 (32 L. Ed. 308) the court said:

"Such being the contract, the court must give effect to its provisions according to the fair meaning of the words used, leaning, however, where the words do not clearly indicate the intention of the parties, to that interpretation which is most favorable to the insured."

Such is the general voice of authority, and it makes no difference that a question of double liability may be involved. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. 945, 7 C. C. A. 581, 22 L. R. A. 620; Primrose v. Casualty Co., 232 Pa. 210, 81 Atl. 212, 37 L. R. A. (N. S.) 618; Kirkpatrick v. Ætna Life Ins. Co., 141 Iowa, 74, 117 N. W. 1111, 22 L. R. A. (N. S.) 1255; Standard Acc. Ins. Co. v. Hite, 37 Okl. 305, 132 Pac. 333, 46 L. R. A. (N. S.) 986; Depue v. Travelers' Ins. Co. (C. C.) 166 Fed. 183; Ætna Life Ins. Co. v. Vandecar, 86 Fed. 282, 30 C. C. A. 48.

There was no error in the holding of the court that under the evidence plaintiff had proved the death of Magnus Peterson was due to a cyclone, thus establishing double liability.

[3] II. Plaintiff claims that under the policy there should have been recovery for $2,000 additional by virtue of the special beneficiary supplement. This provision is found therein:

"Does also insure Emma Peterson, the beneficiary, under policy No. D4A 18298, issued to Magnus Peterson, in the principal sum of two thousand dollars and for a weekly accident indemnity of five dollars against the effects of bodily injuries sustained during the life of said policy directly and independently of all other causes through external, violent and accidental means."

Also this:

"The amount provided for loss of life of said beneficiary shall be payable to the insured under said policy, but, in case of the prior death of the said insured, the company shall not be liable under this part."

[4] In the brief of plaintiff this statement is made:

"If he [Magnus Peterson] had lived one minute longer than his wife, it cannot now be said or urged that his administrator could not recover."

This is true, and is the very heart of the controversy. The burden, however, was upon plaintiff, as a part of his case, to show that Magnus Peterson lived the one minute referred to. This is not a case of an exception to the policy, but is a clear matter of bringing himself within the terms of the policy. Ætna Life Ins. Co. v. Vandecar, 86 Fed. 282, 30 C. C. A. 48. As this record stands, is it proved that Magnus Peterson survived his wife? There is absolutely no evidence bearing on the question. All the evidence shows is that both went down on

the same boat, in the same storm. Is the situation aided by any presumption?

In Young Women's Christian Home v. French, 187 U. S. 401, 410, 23 Sup. Ct. 184, 186 (47 L. Ed. 233) the Supreme Court said:

"The rule is that there is no presumption of survivorship in the case of persons who perish by a common disaster, in the absence of proof tending to show the order of dissolution, and that circumstances surrounding a calamity of the character appearing on this record are insufficient to create any presumption on which the courts can act. The question of actual survivorship is regarded as unascertainable, and descent and distribution take the same course as if the deaths had been simultaneous."

Counsel for plaintiff argue that under this case a presumption arises that Magnus Peterson and Emma Peterson died at the same time, and claim, therefore, that Peterson could not have died prior to his wife. We do not so understand the decision. It holds that there is no presumption at all.

In Dunn v. New Amsterdam Casualty Co., 141 App. Div. 478, 126 N. Y. Supp. 229, it was held that, where two or more persons meet death in a common distaster, there is no presumption either of survivorship or simultaneous death. Newell v. Nichols, 75 N. Y. 78, 31 Am. St. Rep. 424.

In McGowin v. Menken, 223 N. Y. 509, 119 N. E. 877, 5 L. R. A. 794, affirming the case in the appellate court, it was held that, where two people die in a common disaster, there was no presumption either of survivorship or simultaneous death. We think this is settled law under the Supreme Court decision referred to.

[5] There is another provision of the special beneficiary supplement which shows the intention of the policy that, in order to create liability thereunder, Magnus Peterson must have survived his wife. It reads in part as follows:

"This supplement goes into effect and expires simultaneously with said policy."

This supplement was not an independent policy. The consideration for the original policy covered it, and it went into effect and expired with the policy. The policy ended with Magnus Peterson's death. Hence, unless he was alive at the time of his wife's death, there could be no liability for this additional sum.

The burden, in order to so recover under any theory of the case, was upon plaintiff to show that Magnus Peterson survived his wife. The record not disclosing in any way this survivorship, plaintiff cannot recover the amount provided in the special beneficiary supplement, and the court was not in error in so holding.

The judgment in each case is affirmed.